■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JOSE ROMAN, Respondent.—Appeal by the People from an order of the Supreme Court, Queens County, dated April 17, 1979, which, after a hearing, granted defendant's motion to suppress physical evidence and oral statements. Order reversed, on the law, defendant's motion to suppress denied, and matter remitted to Criminal Term for further proceedings on the indictment. At issue is the propriety of the police action in stopping defendant's vehicle and searching it after the defendant's arrest. The only witnesses to testify at the suppression hearing were the two arresting police officers. Their testimony was essentially that they observed defendant driving a 1978 green Pontiac Bonneville on Lakewood Avenue in Queens. The officers' attention was attracted to the vehicle because, although it was a new car, it was extremely dirty and had extensive damage to the left front side, from the wheel to the bumper. In addition, the left front tire had red markings similar to the markings placed on spare tires in rental vehicles. The officers believed the vehicle to be rented because of the "Z" on the license plate, indicating that it was a "rental plate". Significantly, in their many years on the police force, and having observed thousands of rental cars, the officers had never seen a rental vehicle in a condition similar to the vehicle which the defendant was driving. The officers followed the vehicle for 8 or 10 blocks, into an area known for "dumping" cars, where they stopped the defendant. The defendant did not have a driver's license and told the officers that his license had been revoked. He did produce the conviction stub portion of the license, which contained numerous convictions. The defendant also produced

a rental agreement which was in another person's name. Defendant asserted that he had gotten the car from a friend of his in the South Bronx, but he did not know the name of this friend. At this juncture, the defendant was arrested and driven to the police precinct by one of the officers while the other officer drove defendant's vehicle to the precinct. Upon entering the vehicle, the police officer found a blue plastic cigarette case on the floor in front of the driver's seat. The officer picked up the case and put it on the seat beside him so that it would not interfere with his operation of the vehicle as he drove it to the precinct. Upon his arrival, the officer searched the vehicle for inventory purposes. The officer initially intended to return the case to the defendant because he believed it contained cigarettes, but as he picked up the blue plastic case, he glanced at it and noticed that it contained neither a package of cigarettes nor individual cigarettes. Because of the translucent nature of the case, the officer was able to see that it contained some other item. The officer then opened the case and found numerous glassine envelopes containing a white substance which was, after testing, identified as heroin. The officer advised his partner of his discovery, and the latter, after advising defendant of his *Miranda* rights, interrogated him about the heroin. The defendant reiterated that he had borrowed the car from a friend, and that the "dope" was his friend's and the police should throw it away. Based upon the unusual condition of defendant's rented car, we fully agree with Criminal Term's conclusion that the initial stop of the vehicle was permissible. The stop was not the result of an arbitrary whim or caprice, but, rather, was premised upon articulable facts (the rental vehicle's unusual condition) which warranted the intrusion (cf. *People v Ingle,* 36 NY2d 413). Moreover, the police officers never having seen a rented vehicle on the road in such poor condition, were motivated prior to the stop to run a stolen vehicle check on the automobile. No response was received before the vehicle was stopped. Having sustained the initial stop, there is no question that in the instant circumstances, the subsequent arrest of the defendant for driving without a license was proper. However, we disagree with Criminal Term's conclusion that the cigarette case was not opened as part of an inventory search and that therefore, the contraband was improperly seized. The *sine qua non* of the constitutional guarantee which protects persons from certain searches and seizures (US Const, 4th Amdt; NY Const, art I, § 12) is that only those searches which are unreasonable are proscribed *(People v Huntley,* 43 NY2d 175, 180). The test of whether the police action is reasonable necessarily depends upon the relevant circumstances of each case *(People v Lemmons,* 40 NY2d 505, 508). Within the realm of constitutional searches are those undertaken by the police for the purpose of inventorying the contents of vehicles lawfully within their control *(People v Sullivan,* 29 NY2d 69). Inventory searches are validly undertaken in furtherance of three general objectives: (1) safeguarding the owner's property while in police custody; (2) protecting the police from potential danger; and (3) protecting the police against claims over lost or stolen property *(South Dakota v Opperman,* 428 US 364, 369). The opening of the cigarette case is fully in accord with these objectives. In *People v Sullivan* (29 NY2d 69, 72, *supra),* where the seizure of contraband (a loaded pistol) contained in a brief case was upheld, Judge Bergan, writing for the majority, stated that the defendant "could not reasonably expect the police to leave a brief case in open sight in the storage facility or expect that they would not make sure when they took control of the brief case what it contained and record its contents." We see no significant distinction between examining the contents of a brief case and examining the contents of a cigarette case. Although

there is an obvious difference as to size and design, both are containers capable of holding a wide variety of items. Nor is it useful to arbitrarily limit the scope of an inventory search. The discovery of the blue plastic cigarette case was neither motivated by any unreasonable suspicion of criminal activity nor by any design to seize evidence for prosecutorial purposes. Rather, the case was discovered when the officer drove the vehicle to the precinct. It was in the officer's plain view once he lawfully entered the vehicle and certainly he would have discovered it when he inventoried the car's contents. The suggestion that the officer should have stopped his examination short of opening the case is untenable. By merely glancing at the translucent case the officer was able to tell that the case did not contain cigarettes and that some other item was stored in it. What then were the officer's options? He could have left the unopened cigarette case in the vehicle. But this is contrary to the essential purposes of an inventory search. He could have given the unopened case to the defendant. But this would obviously violate normal arrest procedures since it had already been ascertained that the case did not contain cigarettes. The only other option is that the officer could open the case for the purpose of determining whether the contents should be vouchered or whether they could be properly given to the defendant. That this last alternative entails a motivation akin to curiosity, as found by Criminal Term, does not detract from the propriety of the officer's conduct. Having determined that the cigarette case was properly discovered, and in light of the circumstances that the officer knew that the case contained some object other than cigarettes, it cannot be claimed that the act of opening the case was unreasonble. On the contrary, no other conduct would have comported with the officer's proper performance of his duty. As in *People v Sullivan* (29 NY2d 69, *supra),* the defendant could not reasonably expect the contents of the cigarette case to be free from scrutiny. Consequently, it must be concluded that the seizure of the glassine envelopes was permissible and defendant's motion to suppress the evidence should have been denied. Criminal Term suppressed defendant's statements as tainted fruit. On the instant record there is no question that the statements were voluntarily made after the receipt of *Miranda* warnings. Having determined that there was no poisoned tree, it follows that there is no basis to derivatively suppress defendant's statements. Accordingly, Criminal Term's order of suppression should be reversed. Titone, J. P., Mangano, Gibbons and Rabin, JJ., concur.