■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v NATHANIEL HARRISON and KEVIN CABEY, Respondents. — Appeal by the People from an order of the Supreme Court, Queens County (Chetta, J.), dated June 13, 1980, which, after a hearing, granted defendants' motions to suppress physical evidence. Order affirmed. On January 4, 1979, at approximately 1:15 A.M., Police Officer Mark Stahl and his partner, Officer Dillon, were patrolling in an unmarked police car, in the vicinity of Cross Bay Boulevard and Belt Parkway

in Queens. They observed a 1978 blue Chrysler Cordoba, with a "Z" license plate (indicating that it was a rented vehicle), pass them on the right. Their suspicions were aroused because the vehicle was very dirty, and they trailed it for several blocks. Three male blacks, one wearing a red hat, were seen in the vehicle. When the Cordoba parked, on a street on which a bar and grill was located, Stahl parked his vehicle behind it. Stahl and Dillon exited their car and approached the Cordoba, one officer on each side. Stahl ordered the defendant Harrison, who was about to get out of the Cordoba, to remain in the car. Gilbert Williams, who was in the backseat, was told to sit up. After identifying himself as a police officer, Stahl asked the defendant Cabey, the driver of the vehicle, for his license and registration. Cabey could not produce either, but Harrison was able to find his driver's license. Stahl and Dillon returned to their car, ran a plate check on the Cordoba, and learned that the car had not been stolen. While at the police car, Stahl checked a piece of paper on which he had taken notes from a police briefing. He saw that three black men, one with a red hat, driving a late model blue-green Cordoba, had been involved in a robbery on the previous night, approximately one mile from where the defendants had stopped. Officer Stahl returned to the Cordoba, shined his flashlight through the window at Harrison's feet, and observed a .22 caliber revolver on the floor of the car. Stahl drew his gun and ordered the three men out of the Cordoba. A search of the car revealed a second .22 caliber handgun, and a .38 caliber gun. All three men were placed under arrest. Cabey and Harrison were charged with various weapons offenses. After a hearing, the guns were suppressed on the ground that they had been the product of unlawful police conduct. The instant appeal ensued. There is no merit to the District Attorney's contention that the police conduct prior to the defendants' arrest amounted to "an extremely minor intrusion." The defendants' vehicle was approached by two officers, who walked to opposite sides of the car. The defendant Harrison was directed to remain in the car, the other passenger, Gilbert Williams, was told to sit up and the driver, defendant Cabey, was asked to produce a license and registration. Although no force or threat of force was used, it was clearly conveyed to the defendants and Williams that they were not free to leave. The police conduct amounted to a significant interruption of the defendants' liberty of movement: a "stop" within the meaning of CPL 140.50 and a "seizure" within the meaning of the Fourth Amendment (see *People v Cantor,* 36 NY2d 106; see, also, *United States v Mendenhall,* 446 US 544). As such, it can be justified only by a showing that the police had a reasonable suspicion that the defendants were committing, had committed, or were about to commit a crime (see *People v Cantor, supra).* On the record before us, we cannot say that there was adequate proof of reasonable suspicion. There was an indication that the defendants, and the vehicle in which they were riding, fit the description of the perpetrators involved in the recent robbery and the car used in connection with it. However, the testimony of Officer Stahl, who had learned of the robbery in a police department briefing, constituted insufficient proof that the defendants were reasonably suspected of the robbery (see *People v Havelka,* 45 NY2d 636). Nor can the stop be justified upon the ground that the license plate of the Cordoba was apparently dangling, in violation of section 402 of the Vehicle and Traffic Law. At the hearing, Officer Stahl candidly admitted that he was unaware that the hanging license plate was a violation, and that he had not mentioned the plate in any of his prior notes or memoranda. In the circumstances, the hearing court properly concluded that the condition of the license plate did not motivate the police action, and can therefore not be used to justify the stop (see *People v Allende,* 39 NY2d 474). Finally, we do not believe that the condition of the car, in and of itself, provided a basis for the stop. *People v Roman* (74 AD2d 589, revd on other

grounds 53 NY2d 39) is clearly distinguishable. In *Roman,* the rented vehicle, in addition to being very dirty, had a damaged front end and was spotted in an area known for "dumping" cars. We held, and the Court of Appeals agreed, that the police were justified in stopping the vehicle. In the case at bar, by contrast, the police conduct appears to have been motivated solely by the facts that the vehicle was rented and very dirty. These facts without more, do not amount to reasonable suspicion of criminal activity. Since the guns were clearly the fruits of the initial, unlawful stop, their suppression was required. Titone, J. P., Rabin and Margett, JJ., concur.

Weinstein, J., dissents and votes to reverse the order and deny the motions to suppress evidence, with the following memorandum: I respectfully dissent. The analysis under the Fourth Amendment is "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security" *(Terry v Ohio,* 392 US 1, 19). To be considered are "(1) the nature and scope or severity of the interference with individual liberty, (2) the public interest served, and (3) the objective facts upon which the [law] enforcement officer relied, in light of his knowledge and experience" *(People v Howard,* 50 NY2d 583, 589). The rented car in this case was not stopped by the police. The police action taken was a request for information (cf. *People v Miller,* 52 AD2d 425, affd 43 NY2d 789; *People v De Bour,* 40 NY2d 210, 215). Even if this were deemed a stop, I would uphold the police conduct. The stop of a vehicle may not be "the product of mere whim, caprice, or idle curiosity" and "'specific and articulable facts'" must formulate the predicate for the intrusion *(People v Ingle,* 36 NY2d 413, 420; *Delaware v Prouse,* 440 US 648, 661; 3 La Fave, Search and Seizure, A Treatise on the Fourth Amendment, § 10.8, 1981 Pocket Part, pp 62-63). In *People v Roman* (74 AD2d 589, revd on other grounds 53 NY2d 39), this court recently held that the extremely poor condition of a rented car which was observed in an area known for "dumping" stolen cars presented sufficient articulable facts to stop the car. The rented car in the instant case was not in as unusual condition as the vehicle in *People v Roman (supra)*. Nevertheless it was the "very, very dirty" condition of the rented car as well as the hanging license plate which caught Officer Stahl's attention. The police officer's request for a license and registration was reasonable based upon the objective facts relative to the car's condition. Moreover, Officer Stahl's lack of knowledge that the hanging license plate constituted a traffic violation (Vehicle and Traffic Law, § 402) does not negate the objective reasonableness of the police action (see *Scott v United States,* 436 US 128, 137-138; 1 La Fave, Search and Seizure, A Treatise on the Fourth Amendment, § 1.2, 1981 Pocket Part). Officer Stahl's request that Williams stay in the car does not elevate the police action to the level where reasonable suspicion that criminal activity was afoot is required (cf. *People v Allende,* 39 NY2d 474). Courts have recognized that a simple request for a license and registration entails a degree of danger to the inquiring police officer *(Pennsylvania v Mimms,* 434 US 106; *People v Finlayson,* 76 AD2d 670, 680-681; *People v Miller,* 52 AD2d 425, 430, *supra)*. In *Pennsylvania v Mimms (supra),* the United States Supreme Court held that an officer may request a person lawfully stopped for a routine traffic violation to step out of the car. The court maintained (p 111): "What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety." It follows from *Pennsylvania v Mimms (supra)* that a request to stay in the car to minimize the potential for danger is also a reasonable incident to a request for information in a traffic check. In fact, the dissenters in *Pennsylvania v Mimms* noted that some authorities maintain the better practice for safety purposes is to keep persons seated in the car during a traffic check (436 US, at p 119 [Stevens, J., dissenting]). The potential for violence would appear to be that

much greater when the persons in the car outnumber the officers, as was the situation in this case. The hearing court was therefore incorrect in concluding that the command to get back in the car was unjustified in the absence of reasonable suspicion that criminal activity was afoot. For the reasons set forth above, I would reverse and deny the motion to suppress.