Jasen, J.
(dissenting). The majority today holds that the police officers’ actions in making a simple inquiry of the occupants of a “very, very dirty” parked rental car as to the ownership of the vehicle and requesting one of the occupants to remain in the car as he attempted to exit before the inquiry could be conducted were unjustified in the absence of “reasonable suspicion * * * that the occupants [of the vehicle were] engaged in criminal activity.”
I do not believe that the proper legal standard to be applied under the circumstances present here is reasonable suspicion that criminal activity is afoot but, rather, all that is required and all that should be required for a police officer to request any information is an objective credible reason for making the inquiry, which need not necessarily be related to criminality. (People v De Bour, 40 NY2d 210, 223.) Thus, I would hold that the police had a right, based *480 on an objective credible reason, to initiate an inquiry of the driver of the vehicle and that the police officers’ conduct in requesting Harrison to remain in the vehicle as he attempted to exit was justified and reasonable under the circumstances. Accordingly, I would reverse the order of the Appellate Division and deny defendants’ motions to suppress the seizure of three loaded revolvers.
At the outset, it is important to note that this case does not involve a stopping or blocking of a motor vehicle by the police. Nor does it involve a stop and frisk situation, or a case where the police approached the car with guns drawn and ordered the occupants to freeze and not move. All that happened was that two police officers observed a “very, very dirty” rental car with a rear license plate hanging askew. They approached the parked car to inquire of the occupants as to the ownership of the vehicle and requested one of the occupants, defendant Harrison, to remain in the car as he attempted to exit. At this point, Officer Stahl proceeded to the driver’s side of the vehicle where he asked to see defendant Cabey’s license and registration. Another passenger, Williams, who was lying down in the back seat, was told to sit up. Cabey stated that he did not have either a driver’s license or the registration for the car. Harrison volunteered his license, but did not have the registration. Williams remained silent. Officers Stahl and Dillon then returned to the patrol car and ran a license plate check which indicated that the car was an impounded vehicle. Shortly thereafter, Officer Stahl reviewed notes he had taken earlier that day during a briefing session and recalled that three men matching the description of the men in the Chrysler had robbed a store approximately one mile away the previous night. The robbery suspects had used a late model Chrysler as a getaway car. The officers then left their car and were approaching defendants’ vehicle when Officer Stahl noticed Harrison rise from a crouched position. The officer shone his flashlight at the floor near where Harrison was sitting and noticed a revolver under Harrison’s feet. The officers then searched the car, found three loaded revolvers and placed the suspects under arrest.
*481 In analyzing the actions of these officers, “[w]e bear in mind that any inquiry into the propriety of police conduct must weigh the interference it entails against the precipitating and attending conditions. By this approach various intensities of police action are justifiable as the precipitating and attendant factors increase in weight and competence.” (People v De Bour, 40 NY2d 210, 223, supra; see, also, People v Ingle, 36 NY2d 413.) In deciding whether the police officers acted reasonably, it is necessary to consider “(1) the nature and scope or severity of the interference with individual liberty, (2) the public interest served, and (3) the objective facts upon which the enforcement [officers] relied, in light of [their] knowledge and experience.” (People v Howard, 50 NY2d 583, 589.) It must also be remembered that “the authority to intercept persons on the street is derived from two sources, the stop-and-frisk law (CPL 140.50) and the common-law power to inquire.” (People v Cantor, 36 NY2d 106, 112.) While reasonable suspicion that a particular person has committed, is committing, or will commit a crime is required before the police may stop and frisk that individual (CPL 140.50, subd 1; Terry v Ohio, 392 US 1; People v De Bour, supra, at p 223), less is required when a police officer is merely requesting information from an individual (People v De Bour, supra, at p 223).
Applying these factors, it must be determined whether (1) the police officers were justified in conducting an inquiry of the defendants as to the car; and (2) whether the scope of the officers’ conduct in conducting the inquiry — i.e., the request of the officers to Harrison not to leave the car — was reasonable under the circumstances.
As to the propriety of the inquiry, the question is whether the officers under the undisputed facts present here were justified in approaching defendants’ car to request information as to ownership of the vehicle. To justify this action, only an objective credible reason for doing so, not necessarily related to criminality, is all that is required. (People v De Bour, supra, at p 223.) To require reasonable suspicion would not only contradict the principles espoused in People v De Bour, but would defy com *482 mon sense as well.[1] The policies underlying this principle are deeply rooted in the opinions of this court, as well as those of the United States Supreme Court. In People v Rivera (14 NY2d 441, 445), this court recognized that “the evidence needed to make the inquiry is not of the same degree or conclusiveness as that required for an arrest.” This recognition was expressly based on the grounds that “[t]he business of the police is to prevent crime if they can. Prompt inquiry into suspicious or unusual street action is an indispensable police power in the orderly government of large urban communities. It is a prime function of city police to be alert to things going wrong in the streets; if they were to be denied the right of such summary inquiry, a normal power and a necessary duty would be closed off.” (People v Rivera, supra, at pp 444, 445.) “[T]he legal theory of Rivera on the initial general right of police inquiry on the streets was approved in the note to Chief Justice Warren’s opinion in Terry v. Ohio (392 U. S. 1, 11, n. 5).” (People v Rosemond, 26 NY2d 101, 104; see, also, People v Peters, 18 NY2d 238, 242.)
It seems abundantly clear that Officers Stahl and Dillon had an objective credible reason to request the license and registration of defendant Cabey, based upon the car’s condition — i.e., the car involved was rented, it was “very, very dirty”, and it was missing a bolt securing the license plate, which caused the license plate to hang askew. It was the unusual condition of the car, which the officers knew was rented by virtue of the license number, which attracted the officers’ attention since it is common knowledge that ordinarily rental cars are relatively clean and well maintained.
In a similar case, we held that police officers who observed a very dirty rental car with a dented fender in an area known for “dumping” acted with reasonable suspicion when they stopped that car. (People v Roman, 74 AD2d 589, revd on other grounds 53 NY2d 39.) Our decision in Roman implicitly recognized the fact that automobile *483 rental companies routinely keep their cars clean and well maintained. It was decided, therefore, that, based upon the unusual condition of defendants’ rented car, giving rise to some suspicion involving the vehicle, police investigation was required. The reasoning of Roman is equally applicable here. The observations of Officers Stahl and Dillon were more than sufficient to arouse the suspicion of the officers as to the ownership of the car involved. The need to inquire and investigate was not the result of an arbitrary whim or caprice, but, rather, was based upon objective facts which warranted the intrusion of an inquiry as to the vehicle. Under these circumstances, I believe they acted reasonably in approaching the car to verify their suspicion.[2]
Turning then to the second prong of the analysis — whether the scope of the officers’ conduct in making the inquiry (i.e., the request of the officers to Harrison not to leave the car) was reasonable — regardless of how one characterizes the request by the police that Harrison remain in the car (i.e., limited seizure or limited intrusion), it is clear that the act constituted only a minor inconvenience which was necessary for the officers to attempt to obtain the information they had a right, if not a duty, to seek. (People v De Bour, supra, at p 220; People v Rivera, supra, at p 444.) A less intrusive interference by the police while attempting to elicit proper and lawful information is difficult to imagine.
For this reason and the reasons to follow, I conclude that the officers acted reasonably in this case. This conclusion becomes even clearer when the interests of the government are balanced against the severity of interference with the defendants’ individual rights. (People v Howard, 50 NY2d 583, 589, supra.) The interference with the defendants’ rights was minimal. They were not forced over to the curb *484 and instructed to stop and park their car. No force, either actual or implied, was used and defendants were not degraded in any way. Moreover, if the inquiry dispelled the officers’ justifiable suspicion, the defendants would have been free to exit the parked vehicle and go about their affairs. The officers did not even conduct a significant interrogation. Harrison was merely told to stay in the car while Cabey was asked for his license and registration. In a case involving a similar issue, the United States Supreme Court held that ordering a person to get out of his car was a de minimis intrusion. (Pennsylvania v Mimms, 434 US 106, 111.) I believe, therefore, that ordering Harrison to remain in the car until an inquiry could be made was even less intrusive. It cannot be seriously contended that the slight inconvenience imposed on Harrison or the other occupants of the car was significant in any way. (See People v Rivera, supra, at p 447.)
The interests of the government, on the other hand, were compelling. Officer Stahl, in properly attempting to request information of the defendants, sought assurance that Harrison remain in the car. This was necessary not only so that Harrison could be questioned, if necessary, but also to insure the safety of the police officers. “If we recognize the authority of the police to stop a person and inquire concerning unusual street events we are required to recognize the hazards involved in this kind of public duty. The answer to the question propounded by the policeman may be a bullet; in any case the exposure to danger could be very great.” (People v Rivera, supra, at p 446.) Former Judge Bergan made this statement in an opinion justifying a frisk. His words apply with even greater force when a much less intrusive action such as a request to remain in a car is at issue. The alarming increase in acts of violence directed against police officers speaks for itself. “We think it too plain for argument that the State’s proffered justification — the safety of the officer — is both legitimate and weighty.” (Pennsylvania v Mimms, supra, at p 110.)
It is imperative that police officers not be stripped of the right to impose a very slight inconvenience on an individual when it is necessary for the protection of the officer. The opinion of the majority, requiring a police officer to *485 have reasonable suspicion of criminal activity before ordering an individual to remain in his car, would effectively destroy the right of the police to safely request information and make proper inquiries. That requirement also conflicts with the standards established by this court in People v De Bour (supra, at p 223). Additional support for the compelling nature of the State’s interest in this issue is found in a study which reported that “approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile.” (Bristow, Police Officer Shootings — A Tactical Evaluation, 54 J Grim L C & P S 93 [1963], cited in Pennsylvania v Mimms, supra, at p 110; see, also, Adams v Williams, 407 US 143, 148, n 3.) Such a situation is frighteningly apparent in the instant case involving a nighttime inquiry where the occupants of the car outnumbered the police. The chain of events whereby Harrison sought to get out of the car as the officers approached, his subsequent bending over in the front seat after being ordered to remain in the car, and the ultimate discovery of a loaded revolver on the floor under his feet paints a chilling scenario of what might have happened had Officer Stahl not told Harrison to remain in the car.[3]
Since the police have a duty to protect the public by requesting information and making reasonable inquiries concerning unusual events or activities, it is incumbent upon the courts not to allow unreasonable restrictions to be imposed on those officers which would endanger their lives. After an officer has an objective credible reason for seeking information, he must be allowed to follow reasonable procedures which will allow him to make the neces *486 sary inquiries and at the same time insure his own personal safety. This is especially true when the inquiry procedure involved constitutes a minimal interference with the rights of the individual, as there was here.
I also take issue with the majority’s further holding that the legal predicate (objective credible reason or reasonable suspicion) required to justify the police officers’ actions in this case, as found by the courts below, “involves a mixed question of law and fact which is beyond the review powers of this court.”[4] (People v Alexander, 37 NY2d 202.)
This limitation of the court’s power to review “mixed questions of law and fact” is self-imposed and, in my opinion, should be reconsidered. I would agree that the determination of the courts below as to the existence of facts and circumstances, the factual inferences to be drawn therefrom, the credibility of witnesses and the weight to be given to the evidence presented are all questions of fact and, consequently, the suppression court’s determination concerning these issues, when affirmed by the Appellate Division, is beyond this court’s power to review. However, when the facts and circumstances are undisputed or when certain facts and circumstances have been found to exist by the courts below, the issue as to whether on these facts there was an objective credible reason for the police to make an inquiry is a pure question of law, properly reviewable by this court. (People v Oden, 36 NY2d 382; see, also, People v Ingle, 36 NY2d 413; People v Cantor, 36 NY2d 106; People v Corrado, 22 NY2d 308; Fagnan v Knox, 66 NY 525; Besson v Southard, 10 NY 236; Masten v Deyo, 2 Wend 424; McCormick v Sisson, 7 Cow 715.)
*487 The majority erroneously cites People v Oden (supra) as support for its conclusion that “probable cause”, “reasonable suspicion”, “objective credible reason” and similar determinations are beyond the review powers of this court. In that case, we made it abundantly clear that in examining these mixed questions of law and fact “the truth and existence of the facts and circumstances bearing on the issue [is] a question of fact, and the determination of whether the facts and circumstances found to exist and to be true constitute probable cause [is] a question of law”. (People v Oden, supra, at p 384 [emphasis supplied].) The court reiterated the principles espoused almost without exception, for 150 years. “If the facts and circumstances adduced as proof of probable cause are controverted so that conflicting evidence is to be weighed, if different persons might reasonably draw opposing inferences therefrom, or if the credibility of witnesses is to be passed upon, issues as to the existence or truth of those facts and circumstances are to be passed upon as a question of fact; however, when the facts and circumstances are undisputed, when only one inference can reasonably be drawn therefrom and when there is no problem as to credibility, or when certain facts and circumstances have been found to exist, the issue as to whether they amount to probable cause is a question of law”. (People v Oden, supra, at p 384 [emphasis supplied].) Finally, in recognizing our powers to review these determinations, we held that: “Under the process outlined and applied herein, had the Criminal Court, grounded on different inferences or dissimilar credibility considerations, properly made other findings of fact indicating additional bases for probable cause and had its order, in turn, been affirmed by the Appellate Term, this court would be required to review as a question of law whether such facts as then found were sufficient to constitute probable cause.” (People v Oden, supra, at p 386 [emphasis supplied].)
Thus, reaching the question of law presented on this appeal, I would hold that the police had a right, based on an objective credible reason, to initiate an inquiry of the driver of the car and request one of the occupants to remain in the car and that such police conduct was justified and reasonable.
*488 Chief Judge Cooke and Judges Jones, Fuchsberg and Meyer concur with Judge Wachtler; Judge Jasen dissents and votes to reverse in a separate opinion; Judge Gabrielli taking no part.
Order affirmed.

. Defendants’ reliance on People v Cantor (36 NY2d 106) is misplaced since defendant therein was forcibly seized when he was surrounded by three policemen while his car was blocked by a police vehicle. There is no doubt that reasonable suspicion is required before a person is forcibly seized. (People v De Bour, 40 NY2d 210, 223.0)

. It is also beyond dispute that the officers, subsequent to approaching the car for the second time, but before searching it, had reasonable suspicion that criminal activity was afoot after Cabey admitted that he had no license or registration and after it was learned that the Chrysler was an impounded vehicle and that it was similar to the getaway car used in the nearby robbery the previous night involving suspects matching defendants’ descriptions.

. The majority fears that under this analysis “reasonable suspicion would never be required because every stop begins with a police officer approaching an individual for information.” I find little merit in the majority’s concern for two reasons. First, this analysis criticized by the majority was unanimously adopted and approved by our court in People v De Bour. (40 NY2d 210, 218-219.) Second, it is beyond dispute that reasonable suspicion, rather than an objective credible reason, is required before a person can be legally stopped. (Terry v Ohio, 392 US 1; GPL 140.50, subd 1.) However, in cases such as this, where no stop of a vehicle is involved and the police are merely requesting information, only an objective credible reason for making the request is required. The interference caused by the actions taken by the police during the course of the inquiry must then be balanced against the precipitating and surrounding circumstances in order to determine the reasonableness of those actions. Consequently, the fears voiced by the majority are unfounded.

. While the majority correctly notes that “Judges, too, are expected to follow the law, even when they have played a part in fashioning the rule”, this sudden respect for stare decisis appears inconsistent when viewed in light of the fact that the “binding” self-imposed rule espoused by the majority exists today only because of the dramatic departure taken by this court in People v Alexander (37 NY2d 202) from the prior rule as it existed for 150 years. (See People v Oden, 36 NY2d 382; People v Ingle, 36 NY2d 413; People v Cantor, 36 NY2d 106; People v Corrado, 22 NY2d 308; Fagnan v Knox, 66 NY 525; Besson v Southard, 10 NY 236; Hasten v Deyo, 2 Wend 424; McCormick v Sisson, 7 Cow 715.) Moreover, since this court has never before hesitated to abandon a self-imposed rule when experience has proved that it no longer fulfills the purposes for which it was adopted, there is certainly no valid reason not to do so here where the result would be to merely return to the time-tested rule as it existed before 1975.