THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ANTHONY JEROME, Also Known as JEROME ANTHONY, Respondent.

First Department, April 10, 1984

**APPEARANCES OF COUNSEL**

*Debora K. Grobman* of counsel (*Amyjane Rettew* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for appellant.

*David Wasserman* of counsel (*William E. Hellerstein,* attorney), for respondent.

**OPINION OF THE COURT**

LYNCH, J.

The People appeal an order granting the defendant's motion to suppress a gun found on him and statements made to the arresting police officers. We find that suppression should have been denied.

In a midafternoon in January, 1982, two police officers were in a marked police car driving on 145th Street. They passed a service station where they knew that "there's a lot

of stolen cars and a lot of stolen property sold". In the yard of the station they saw, at some remove from the gas pumps, a late model Toyota with rental car plates. In it were three young males, one behind the wheel. The officers made a U-turn for a better look. When this happened, the driver of the Toyota looked at the police car and then began driving out of the station. The Toyota jerked forward, then stopped, then jerked forward again, and stopped again. Finally, the driver got the car under motion, turned into a parking lane and then, without signaling, into a driving lane. At this point, the police pulled the car over. The defendant was in the front passenger seat.

At the request of the police, the driver produced his license but was unable to produce a registration. The officer suggested that rental cars usually have the rental contract and the registration in the glove compartment. The driver looked there and found a rental contract. The officer asked the driver to name the person to whom the car had been rented. There was no response. Asked again, the driver admitted that he did not know. He said that he got the car from a man who lived in his project building whose name was unknown to him. He added, "I'm just going to bring the car back up to where I originally got it and he'll be standing on the street corner waiting and that's how I'm bringing it back".

Observing that the rental car was due to be returned that day, the officers called for another car to take the Toyota driver to the precinct for further investigation. The passengers were asked to step out. One officer patted down the driver; another patted down the defendant and a loaded gun was found in his jacket pocket. The defendant was arrested and all three of the occupants were taken to the precinct. After having been given his *Miranda* rights, the defendant stated, "I had found the gun a day ago behind the building where I lived", and he explained that he kept it because "I thought I might need it because of the roughness of my neighborhood".

To this testimony given at the suppression hearing, one or the other of the officers added: that he did not recall giving a summons to the driver for his failure to signal his turn into traffic, that he may just have warned him; that

he suspected unauthorized use of a motor vehicle; that his intent was to notify the rental company and the person named on the rental contract, but that the driver and the other passenger were released when the rental company reported that the car was not listed as stolen and the lessee could not be found; that it was department policy to frisk anyone before bringing him to the precinct for investigation. The officers also stated that they intended to stop the car before it had failed to signal its turn into traffic. The officers were under the impression, erroneously as it turned out, that one had to be 25 to rent a car in New York City. The driver looked to them to be much younger than that.

The hearing court, in granting suppression, found that the Toyota was not stopped for any failure to signal, but for a suspicion of an underaged driver. It found that the police lacked probable cause to transport the occupants to the precinct and that inquiry showing that the car had not been reported stolen eliminated any reasonable suspicion that it had been stolen. (The court made a factual error here; there was no testimony that a plate check had been made from the street.) The court also found that further police action had to have been based on the driver's claim how he got the car, an explanation that the court found was dubious but not a patent falsehood. The court further found that the officers had no reason to be suspicious of the passengers and thus there was no reason for patting them down.

A temporary stop of a motor vehicle is less intrusive than an arrest and does not require probable cause. "[T]he degree of suspicion required to justify the stop is minimal. Nothing like probable cause as that term is used in the criminal law is required" (*People v Ingle,* 36 NY2d 413, 415). All that is required are "some articulable facts, which initially or during the course of the encounter, establish reasonable suspicion that the person is involved in criminal acts" (*People v Harrison,* 57 NY2d 470, 476).

The hearing court found that the police, believing the minimum age for car renting was 25, stopped the Toyota because its occupants were under that age. While this was erroneous in that it is possible to rent a car at 18 years of

age, nonetheless, we find that the attendant facts gave cause for reasonable suspicion. Here were youthful occupants of a rental car, seeming to the police to be underage, at a location known to deal in stolen cars, parked in an area of the station removed from any of the service facilities, who attempted to drive away when the police car made a U-turn to look them over, and whose unfamiliarity with the car was obvious from its jerk-and-stall operation. We find ample justification for the police stopping the car (see *People v Roman,* 74 AD2d 589, revd on other grounds 53 NY2d 39).

When evidence is apparent to a police officer "sufficient to lead a person of his experience and sophistication to reasonably conclude that a crime had been or was being committed", there is probable cause for an arrest (*People v Foster,* 83 AD2d 282, 285). Here, the inability of the driver of the Toyota to produce a registration, his lack of knowledge of the rental contract in the glove compartment, his ignorance of the name of the person to whom the car had been rented, followed by his unlikely story how he came into possession of the car, all superimposed upon the observations that led to the stop initially, constituted probable cause for the driver's arrest. It is immaterial that a license plate check was not made from the street. With that day only left to run on the rental agreement, the police could have reasonably concluded that a theft of the vehicle had not yet been reported.

It was error for the hearing court to have concluded that some suspicious conduct by the defendant was necessary for his arrest apart from his being a passenger in a car the police had probable cause to believe stolen. The probable cause supporting the arrest of the driver would support the arrest of the passenger (see Penal Law, § 165.05, subd 1). Probable cause having been established, the police were warranted in patting down the defendant prior to transporting him to the precinct (see *People v Ellis,* 93 AD2d 657; *People v Howington,* 83 AD2d 756).

The hearing court did not address the requested suppression of the defendant's statements. We find that they were voluntarily made after he had been fully apprised of his rights.

Order, Supreme Court, New York County (Brenda Soloff, J.), rendered July 9, 1982, granting defendant's motion to suppress physical evidence and a statement, should be reversed, on the law and the facts, and the motion to suppress denied.

FEIN, J. (dissenting). I would affirm the order granting suppression.

The preliminary issue is whether the circumstances leading to the discovery of the weapon found upon the defendant arose from an unreasonable intrusion upon defendant's right of privacy. The basic question is whether the police had sufficient cause to stop the vehicle in the first instance. If they did not, any subsequent search or frisk was not authorized. The predicate for police action must be facts sufficient to justify a stop and an inquiry. A stop is less intrusive than an arrest and thus does not require probable cause, but at least requires reasonable suspicion (*Terry v Ohio,* 392 US 1; *People v Harrison,* 57 NY2d 470, 476; see CPL 140.50, subd 1). Taking the officers at their own word, it is plain that the vehicle was stopped because it was "a late model Toyota * * * with three young male blacks in it, and the car bearing rental plates." The officers thought the occupants were under 25, which they erroneously believed was the minimum age for rental of a vehicle.

However, it is clear that there was no operation of the vehicle, while the officers had it under observation, which would justify the stop. The fact that it was not near the gas pumps at the time it was observed is not unusual. The vehicle may have been stopped in order for its occupants to make an inquiry, or it may have already been filled up with gas and was ready to depart. One of the officers testified the vehicle "was at the pumps. I don't recall whether he had gotten gas."

That the officers believed that a rental vehicle could not be operated by someone under the age of 25 is hardly a lawful basis for a stop. Yet these were the motivations which impelled the officers to make a U-turn for the purpose of stopping the vehicle for inquiry. The fact that the vehicle under observation "was jerking" or "jerked forward" twice and was "moving out in a hesitant manner"

as it turned out of the station could result from a variety of reasons unrelated to the commission of a crime and not warranting a stop or inquiry. It provided no ground for suspicion or for a stop, albeit "there's a lot of stolen cars and a lot of stolen property sold at that gas station".

At this point, the officers' intention to stop the vehicle was clear and was without lawful basis. The fact that the vehicle then pulled out of the gas station and turned into a parking lane and then into a driving lane was not the basis for the stop. There was not even an inquiry concerning this procedure, nor was a summons issued to the driver for this infraction, if there was an infraction (Uniform Vehicle Code, § 11-604, subd [d]; § 11-605, subd [b]).

The suppression Justice did not credit the testimony of the officers that the vehicle had been stopped for any such violation. Indeed, the officers themselves did not so testify.

Although the degree of suspicion required to justify a stop is minimal and need not reach the level of probable cause (*People v Ingle,* 36 NY2d 413, 415), there must be some articulable fact providing reasonable suspicion that the individual being stopped is engaged in criminal acts (*People v Harrison,* 57 NY2d 470, 476, *supra*). A stop is a limited seizure of the person and requires, at the minimum, reasonable suspicion. There was no lawful basis for the stop. Since there was no lawful basis for the stop, there was no authority to require the driver, the defendant and the third occupant to get out of the car (see *Pennsylvania v Mimms,* 434 US 106; *People v Harrison,* 57 NY2d, at pp 475, 476).

*People v Roman* (74 AD2d 589, revd on other grounds 53 NY2d 39), relied upon by the majority, is not to the contrary. In that case, the vehicle was a new car "extremely dirty and had extensive damage to the left front side, from the wheel to the bumper". The left front tire had red markings similar to those on spare tires on rental vehicles and the car had a "rental plate". The officers had never seen a rental vehicle in such condition. The vehicle was being driven into an area known for "dumping cars". Moreover, when the vehicle was stopped, the driver admitted he had no operator's license and told the officers that his license had been revoked. The conviction stub portion which he produced contained numerous convictions.

Everything the officers observed in that case was suspicious. Not so here, unless we are to hold that suspicion sufficient to authorize a stop arises whenever three young men are sitting in a vehicle which bears rental license plates, in a gas station in broad daylight, albeit the gas station is known for dealing in stolen property. The circumstances did not warrant the stop.

To justify the stop, there must be some articulable facts which initially or during the course of the encounter establish a reasonable suspicion that the person is involved in criminal acts or poses some danger to the officers (*People v De Bour,* 40 NY2d 210, 216; *People v Carrasquillo,* 54 NY2d 248, 252).

Even if the stop was warranted, the police procedure thereafter was unjustified. The requirement that the driver and the two passengers, including the defendant, step out of the vehicle, had no lawful basis. There was no suspicious act indicating either criminality or danger to the officers. As stated in *People v Marsh* (20 NY2d 98, 101), "the Legislature never intended to authorize a search of a traffic offender unless, when the vehicle is stopped, there are reasonable grounds for suspecting that the officer is in danger or there is probable cause for believing that the offender is guilty of a crime rather than merely a simple traffic infraction."

The majority opinion suggests that the driver, the defendant and the other passenger were all placed under arrest prior to the time the gun was found on the defendant. The record does not support this conclusion. It is clear that the arrest occurred after the gun was found. Prior to that there was no evidence of any reason to suspect that the police were in danger of physical injury. They determined that in order to pursue their inquiry concerning the rental status of the vehicle, further investigation would be made at the police precinct. For that purpose, it would be necessary to transport the driver and the passengers to the police station in a police vehicle. Departmental policy required a frisk or search before placing the subjects of the inquiry into the police vehicle.

As stated in *People v Howington* (83 AD2d 756), "While we do not question the soundness of that policy as applied

to one lawfully in custody, it may not be employed as justification to search a person impermissibly seized without probable cause for the purpose of transporting him to police headquarters for further interrogation (see *Dunaway v New York,* 442 US 200, 216)."

The passengers in a vehicle stopped for a traffic infraction may not be ordered out of the vehicle or searched, absent some suspicion directed at them (*People v Marin,* 80 AD2d 541). The police conceded that defendant had engaged in no suspicious activity, and had posed no danger to them. Defendant's behavior, at most "equivocal and suspicious" because of the inadequate explanation by the driver as to the source of the vehicle, was "unsupplemented by any additional behavior or circumstances" involving defendant which might have "rais[ed] 'the level of inference from suspicion to probable cause'" to justify the search (*People v Brown,* 32 NY2d 172, 174).

The majority opinion suggests that there was probable cause to support the arrest of the driver which would warrant the police in patting down the defendant prior to transporting him to the precinct. Even the police took no such position. They did not claim to have made an arrest until after the search of the defendant. As the suppression court found, there was no basis for the stop and no basis for an arrest prior to the finding of the gun on the defendant. The fact that the gun was found does not warrant the stop or the search.

Neither the late model condition of the vehicle, the rental plates nor the age or physical appearance of the occupants offered any objective legal basis to support the reasonableness of the stop in the first instance.

It is notable that the driver and the other passenger were neither summoned nor arrested. It was never demonstrated that the vehicle had been stolen or was being operated without permission.

The order appealed from should be affirmed.

SANDLER, J. P., and ROSS, J., concur with LYNCH, J.; FEIN and KASSAL, JJ., dissent in an opinion by FEIN, J.

Order, Supreme Court, New York County, entered on July 9, 1982, reversed, on the law and the facts, and the motion to suppress denied.