OPINION OF THE COURT
James C. Harberson, Jr., J.
FACTS
On January 25, 1991, the defendant was observed driving his 1986 Oldsmobile passenger car on a public road. While the car was under the defendant’s control four passengers in the back seat area were hanging over the front seat around the *814 driver obstructing his rear and side views according to the officer.
The officer stopped the defendant’s vehicle because of this observation which he felt was a violation of Vehicle and Traffic Law § 1213 (a). The defendant was given a ticket for a violation of section 1192 (2), (3), driving while intoxicated when the officer, after stopping the car and talking to the defendant, determined he was intoxicated.
ISSUE
The defendant moves to dismiss the two charges because the officer did not have probable cause to stop the defendant’s car. The defense argues that section 1213 (a) only refers to more than three persons in the front seat or loaded to obstruct the driver’s view to his front or sides.
The People refute this position claiming the statute refers to a car so loaded as to obstruct the view of the driver to the front or sides regardless of the number of people in the front seat.
LAW
A review of this statute from 1917 does give some perspective on the current wording of section 1213 (a) and (b).
Chapter 655 of the Laws of 1917 (General Traffic Highway Law, art 2, § 17 [2]) provided: "No person shall drive any vehicle so constructed or closed in as to prevent the driver from having a clear view ahead and at the sides of such vehicle.”
Twelve years later the Legislature at chapter 54 of the Laws of 1929 (Vehicle and Traffic Law of 1929, art 6, § 81 [15]) continued the wording exactly as above but, in 1930, section 81 (15) was changed to read: "It shall be unlawful for the operator of any vehicle to drive the same when it is so constructed or loaded or when there is in the front seat of the vehicle such number of persons as to obstruct the view of the operator to the front or sides or to interfere with the driver’s control over the driving mechanism of the vehicle.” (L 1930, ch 756, § 3.)
Five years later the Legislature added the sentence: "The presence of more than three adult persons over the age of sixteen years in the front seat of other than a commercial *815 vehicle shall be deemed such number of persons within the meaning of this subdivision.” (L 1935, ch 467.)
A review of the legislative history in New York does provide insight into the purpose of the legislation and the import of the wording of the statute.
In the Bill Jacket for Laws of 1935 (ch 467) is a letter of April 13, 1935 from Assemblyman Charles H. Breitbart of the 21st District, Kings County, commenting on the 1935 legislative change: "The presence of more then three adults over the age of sixteen years in the front seat * * * shall be deemed such number of persons”. He observed: "It is common knowledge upon our highways, thoroughfares, and streets, some automobiles are being driven by irresponsible drivers. Some of these chauffeurs permit the crowding of the front seat by four, five or six persons thereby retarding the action of control of the vehicle. This scene is very common during the summer and is prevalent among young men over the age of sixteen years. It has been estimated by Commissioner Harnett that hundreds of accidents have resulted annually by reason of over-crowding in the front seat. The newly made cars for the past three years are from 48 inches to 58 inches in width and can comfortably accommodate three persons and no more.”
This same sentiment was expressed by Mark Graves, Commissioner of Taxation and Finance, in a letter to Governor Herbert H. Lehman on April 10, 1935, when he wrote in support: "The amendment * * * tends to promote safe driving”.
In the case of Nelson v Arrowhead Frgt. Lines (99 Utah 129, 104 P2d 225 [1940]), the Supreme Court of Utah discussed in relation to a jury charge in a negligence action the wording of a Utah law and its meaning. The wording is identical to the New York law in 1930 and as amended in 1935 and 1957. " '[It] shall be unlawful for any passenger in any automobile to ride in such position as to interfere with the driver’s view ahead or to the sides, or to interfere with the driver’s control over the driving mechanism of the automobile.’ ” (Nelson v Arrowhead Frgt. Lines, 99 Utah, at 131, 104 P2d, at 227, supra.)
The Utah court said (supra, at 132, at 227): "That statute is intended to promote safety upon the highways, and to charge all persons riding in cars with some responsibility for safe driving, at least to the extent of not interfering with the driver’s vision or his operation and control of the vehicle.”
*816 The court discussed three cases from Pennsylvania and where the overcrowding of the front seat by three or more adult persons led to: "restricting the driver’s freedom of action to exercise necessary control in the event of emergencies”. (McIntyre v Pope, 326 Pa 172, 174, 191 A 607, 608, as cited in Nelson v Arrowhead Frgt. Lines, supra, at 135, at 228.)
The court also determined that a person who was 16 and able to operate a motor vehicle would be accountable as a passenger at age 16 for the purposes of contributory negligence reasoning if a 16 year old can drive he possesses adult responsibility when sitting in a front seat with too many other people to be safe.
It is clear the observation in the April 13, 1935 letter of Assemblyman Breitbart about front-seat overcrowding by young men over 16 causing the "hundreds of accidents” that there were an increased number of lawsuits arising from these accidents for personal injury and property damage, and the statute was part of the "standard of care” charge to juries in civil cases in New York and in Oregon during the same period. (See, Libertella v Maenza, 16 AD2d 831; Burns v Dixon, 46 AD2d 943, which cites Senchack v Sterling, 252 App Div 894.)
In 1959 the Legislature consolidated the Vehicle and Traffic Law (L 1959, ch 775). Section 1213 (a) and (b) read:
"Obstruction to driver’s view or driving mechanism, (a) No person shall drive a vehicle when it is so loaded, or when there are in the front seat such number of persons as to obstruct the view of the driver to the front or sides of the vehicle or as to interfere with the driver’s control over the driving mechanism of the vehicle. In no event shall there be more than three persons in the front seat of any vehicle.
"(b) No passenger in a vehicle shall ride in such position as to interfere with the driver’s view ahead or to the sides, or to interfere with his control over the driving mechanism of the vehicle.”
The law reached its current wording in 1963 when the last sentence of subdivision (a) was added allowing more than three people in the front seat based on the total width of the seat. (See, L 1963, ch 621.) This allowance was to accommodate the expansion of the permitted width of 96 inches for commercial vehicle cabs. In a letter dated April 8, 1963, the Department of Motor Vehicles by Arnold W. Wise for Commissioner William S. Hults recommended passage of the bill saying in part:
*817 "There are many commercial vehicles which are now constructed so that the front seat thereof is adequate to carry more than three persons.”
"This was also requested by the major utility companies because these vehicles with expanded front seating were used to carry crews of four people.”
DISCUSSION
From 1917 until 1957 the wording has changed to reflect the type of motor vehicle being built and the problems covered by the changes in structure. The 1917 statute proscribed driving a vehicle "so constructed or closed in as to prevent the driver from seeing ahead and at the sides of such vehicle.” A review of the multitude of vehicle models on the road in 1917 and the homemade nature of the design of the driver’s location from sitting in the open without any weather protection to the elaborate canvas coverings to protect those riding in front, explain the selection of words used to define the problem the statute was intended to control.
In 1929 the number of cars and roads available in the United States substantially increased in number. In the Bill Jacket for the 1930 legislation (L 1930, ch 756) was a news story concerning a report from Charles A. Harnett, State Commissioner of Motor Vehicles, in which he reported a "material increases in traffic fatalities and street and highway accidents: 2,960 killed and 114,807 injured”.
There was a companion story about a group of eight young people killed when their vehicle was struck by a train in Auburn, New York. The story said "The occupants of the automobile evidently did not see the approaching train, though the view at the crossing is unobstructed for a long distance”.
The 1930 text added the phrase not found in the 1917 law: "or when there is in the front seat of the vehicle such number of persons as to obstruct the view of the operator to the front or sides or to interfere with the driver’s control over the driving mechanism of the vehicle.”
In Laws of 1935 (ch 467), the Legislature defined "such number of persons” as "more than three adult persons over the age of sixteen years in the front seat”.
In 1957 (L 1957, ch 698) the statute with the current wording was passed. The word "constricted” was dropped but *818 "so loaded” was retained from the 1935 statute. The sentence added in 1935 defining "such number of persons” was incorporated into subdivision (a) to say no more than three persons unless the seat has been so constructed to allow "eighteen inches of seating capacity for each passenger or occupant in said front seat”.
The 1959 law added a new requirement at subdivision (b): "No passenger in a vehicle shall ride in such position as to interfere with the driver’s view ahead or to the sides”.
This requirement was not limited to the front seat and was not based on the capacity of the vehicle to carry passengers.
Taken as a whole, the statute never addressed obstructing the driver’s view to the rear of the vehicle. If the statute was violated in this case, the evidence must show the passengers’ actions when they were observed by the police either obstructed the driver’s view "to the front (or ahead) or the sides of the vehicle”. There is no evidence there was more than three passengers in the front seat of the vehicle.
Since there is no evidence the passengers were in the front seat or interfering with the driver’s control of the "driving mechanism” of the car, then only if their actions are prohibited by section 1213 (b) was there a rational basis for the officer to believe the statute was violated. If there was no rational basis then "the stop was unlawful and all evidence obtained is suppressed.” (People v Yard, 147 Misc 2d 609, 613.)
DECISION
The history of section 1213 (a) and (b) from 1917 shows the Legislature did not want the driver’s view forward or to the sides obstructed (interfered with) by passengers. The statute limited the number in the front seat in subdivision (a) and clearly stated in subdivision (b) "No passenger in a vehicle shall ride in such a position as to interfere with the driver’s view ahead or to the sides”.
Subdivision (b) limits the conduct of passengers in the vehicle no matter where they sit. So if the actions of the passengers as observed by the officer, whether they are in the front or back seat, appeared to interfere with the driver’s view ahead or to the sides, he had a rational basis to stop the car to issue a ticket for a violation of section 1213 (b).
In the arrest report dated January 25, 1991, the officer said: "It appeared that there were several people in the vehicle and *819 it appeared that they were obstructing the driver’s view and operation of the vehicle. It appeared that there were four individuals in the back seat of the vehicle with them hanging over the driver.”
The defendant’s car was stopped based on this observation. In the court’s opinion these observations of four passengers hanging over the front seat and driver provide a reasonable basis for the officer to conclude the driver’s view to the sides of the vehicle was interfered with by their position. As the novelty song from the 1950’s "Seven little girls sitting in the back seat kissing and hugging with Fred” admonished the driver "keep your mind on your driving, keep your hands on the wheel and keep your roving eyes on the road ahead”, so too does section 1213 (b) require the same of a driver on New York roads today.
The court finds in this case the police had a reasonable basis to stop the defendant because his passengers in the back seat were distracting him from seeing out the sides of his vehicle as well as interfering physically with his line of vision to the side of the car by hanging over him from the back seat.
The motion to suppress the evidence of the defendant’s intoxication discovered after a valid stop for a traffic violation is denied. (See, People v Harrison, 83 AD2d 965, affd 57 NY2d 470.)