THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v
KEITH ELLIS, Respondent.

First Department, May 26, 1983

### APPEARANCES OF COUNSEL

*David H. Steiner* of counsel (*Norman Barclay* with him
on the brief; *Robert M. Morgenthau, District Attorney,*
attorney), for appellant.

*Blanca Rodriguez Cruz* of counsel (*William E. Heller-
stein,* attorney), for respondent.

### OPINION OF THE COURT

KASSAL, J.

On May 20, 1981, at about 4:00 A.M., while it was still
dark, Officer Dellacona, while on radio patrol southbound
on 7th Avenue at about 120th Street, in a marked police
vehicle, observed a northbound automobile being operated
without any headlights. After making a U-turn to follow
the vehicle, the officer observed the car pull over to the
curb, whereupon the driver, defendant, exited the vehicle
and stepped to the sidewalk. The patrol car stopped behind
the car, the officer noticing at that time that the vehicle
bore a standard "Z" license plate, which was indicative of a
rented vehicle. After an inquiry by the officer as to
whether defendant had rented the vehicle, Ellis replied,

"What did I do wrong?" When Dellacona advised that he had been driving without headlights, defendant responded, "Oh, yeah, right. Oh, yeah, I forgot to put them on." Accordingly, the officer requested that defendant produce his license and rental agreement but defendant could produce neither, advising Dellacona that he had no license and that his girlfriend had rented the vehicle. When questioned further with respect to any identification, defendant offered, "Wait a minute, I got a summons the other day for driving without a license" and, after patting himself, declared, "Nope, I don't even have that."

Since defendant had no identification, the officer, consistent with routine police procedure, decided to take defendant into custody and bring him to the precinct so that he might be identified and a summons issued for driving without headlights or a license. Upon conducting a frisk at the scene, Dellacona felt the outline of two bullets in defendant's rear right trouser pocket, whereupon he reached inside and found two .38 caliber bullets and some clear plastic envelopes, containing marihuana.

Following the discovery, the officer informed his partner, "There's a gun here" and, while his partner watched defendant, Dellacona ordered the two female passengers (one in the front seat and one on the rear seat), out of the car, frisked them and, finding no weapon, looked through the accessible areas of the passenger compartment of the vehicle. The officer attempted to open the glove compartment but discovered that it was locked. He tried the ignition key, which would not fit. When defendant informed the officer that he had no key, Dellacona forced open the glove compartment and discovered a loaded .38 caliber two-shot derringer. The bullets, previously found in defendant's pocket, consisted of one with a round nose and the other a flat top, and both fit the gun. At that point, defendant was placed under arrest and handcuffed.

The court concluded, following the suppression hearing, that the officer had acted properly in stopping the vehicle and in frisking defendant as an incident to placing him in custody when an inquiry disclosed that he had no operator or automobile identification. The disclosure of the bullets established probable cause "for a full blown search" of the

vehicle. However, the suppression court determined that the officer had no right to force open the locked glove compartment without first obtaining a warrant since the officer had no reason to fear for his own safety.

We disagree and conclude in reliance upon the most recent expression of opinion by the United States Supreme Court in *United States v Ross* (456 US 798, 102 S Ct 2157) that probable cause to justify the search of the vehicle is sufficient to sustain search of each and every part of the vehicle, including the glove compartment or any locked container.

In *People v Belton* (55 NY2d 49) following remand by the Supreme Court (*sub nom. New York v Belton*, 453 US 454), the Court of Appeals held that a State trooper had proceeded properly in directing defendant and the other occupants to leave a vehicle and patting them down. Upon stopping a speeding vehicle, the officer detected the smell of marihuana and observed an envelope of a type frequently used in sales of that substance on the floor of the car. He inspected the envelope and, after ascertaining that it, in fact, contained marihuana, searched the passenger compartment, including a zippered pocket in defendant's jacket which was lying on the back seat. A quantity of cocaine was discovered in the jacket. In sustaining the propriety of the search, the court observed that until the recent disposition by the Supreme Court in *New York v Belton* (*supra*) a warrantless search, incident to a lawful arrest, was restricted in time and limited to the area within the immediate reach of the defendant, the so-called "grabbable area". Searches of the immediate surrounding area contemporaneous with an arrest had been upheld "to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape" (*Chimel v California,* 395 US 752, 763). In *Belton,* however, the Supreme Court, consistent with the principles of *Chimel*, found that the jacket on the rear seat was within the immediate control of the arrestee, concluding that the area included the interior of the vehicle. Thus, in terms of Federal constitutional principles, the Supreme Court in *New York v Belton* decided that "when a policeman has made a lawful custodial arrest of the occupant of an auto-

mobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" (453 US, at p 460).

Upon remand, the Court of Appeals rejected any suggestion that a different rationale be applied with respect to the permissible limit of a search and seizure under section 12 of article I of the New York State Constitution, at least as far as the automobile exception to the warrant requirement is concerned (*People v Belton,* 55 NY2d, at pp 51, 52). In concluding that the search was valid, the court held: "However, a valid arrest for a crime authorizes a warrantless search — for a reasonable time and to a reasonable extent — of a vehicle and of a closed container visible in the passenger compartment of the vehicle which the arrested person is driving or in which he is a passenger when the circumstances give reason to believe that the vehicle or its visible contents may be related to the crime for which the arrest is being made * * * or there is reason to believe that a weapon may be discovered or access to means of escape thwarted" (55 NY2d, at pp 54-55). The *Belton* court did not reach the specific issue raised in this case, i.e., whether the search may extend to a locked glove compartment. In fact, the court specifically excluded from the scope of its disposition the questions which would be involved where a container is not only closed but also locked or a container within the trunk or baggage compartment of the vehicle (55 NY2d, at p 54, n 3).

While we recognize that the Court of Appeals has not addressed itself to the issue raised on this appeal, we take cognizance of the uncertain state of the law in the area and have in the past expressed our view as to the propriety of following the clear trend of Federal authority in deciding the validity of a search (cf. *People v Smith,* 89 AD2d 549, 550). The issue raised here was considered in *United States v Ross* (*supra*) where the Supreme Court extended the lawful area to conduct a search to the glove compartment and the trunk of an automobile in a case where the police had proceeded on information from a reliable informant who had observed defendant with narcotics in the trunk of his car. In sustaining the right of the officers to conduct a probing search of the passenger compartment and contain-

ers within, the court analogized the scope of the search to that which would be permitted if a warrant were issued "particularly describing the place to be searched" (US Const, 4th Amdt). Thus, the Supreme Court held: "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marijuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand" (102 S Ct, at pp 2170-2171).

Applying this standard to the facts in this case, we agree that the permissible area extended to the locked glove compartment of the vehicle. The most recent expression of opinion by the Supreme Court has extended the permissible scope of the search beyond the immediate area within which the arrest is made. While we recognize the concern that our Court of Appeals has not so held, considering the uncertainty of the state of the law, we opt to follow the clear trend of Federal authority, and sustain the propriety of the search. Under the Federal standard, the relevant inquiry is whether the scope of the search would have been authorized by a warrant issued for that purpose.

Unquestionably, the officer acted properly in stopping to inquire of the operator of the vehicle, which was traveling without headlights at 4:00 A.M. Similarly proper was the request that defendant produce his license and rental agreement. When defendant could offer no identification, the officer proceeded in accordance with appropriate police

procedure in preparing to take him to the precinct and, incident to placing him in custody, patting him down. When the frisk disclosed the presence of two bullets, this, in turn, gave reason to believe that a weapon was present. The probable cause which thus existed to search the vehicle, under the standard contained in *United States v Ross* (*supra*) extended to the locked glove compartment, as a place within the passenger area where one might reasonably expect such a weapon to be found. Instructive is the observation by the Supreme Court in *United States v Ross* (*supra*) as follows: "The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found" (102 S Ct, at p 2172).

Accordingly, the order, Supreme Court, New York County (JEROME MARKS, J.), entered March 25, 1982, granting defendant's motion to suppress a weapon, should be reversed, on the law and the facts, and the motion to suppress denied.

MILONAS, J. (dissenting). In my opinion, the order of the Supreme Court, New York County (JEROME MARKS, J.), which granted defendant's motion to suppress, should be affirmed.

On May 20, 1981 at approximately 4:00 A.M., defendant was driving north without headlights on 7th Avenue past 120th Street when he was observed by Officers Paul Dellacona and Thomas Maloney. They followed in their radio car for a few blocks, and, at around 127th Street, the defendant, apparently on his own volition, drew up to the curb and left the vehicle. His two female passengers remained inside. The officers pulled up behind the defendant's automobile, and Officer Dellacona approached him. Noting that the license plate on defendant's car bore the standard "Z" letter, which is indicative of a rented vehicle, Officer Dellacona advised defendant that he had been driving without headlights and requested his license and rental agreement. Defendant replied that he had no license and, because his girlfriend had rented the car, he had no rental

agreement either. The officer then asked for identification, which the defendant was also unable to produce.

In accordance with regular police procedure mandating that an individual stopped for a traffic offense be detained when he or she is lacking in proper identification, Officer Dellacona decided to bring the defendant to the station house while his identity was being established. In that regard, he undertook a pat-down search, during which he felt the outline of two bullets in the right rear pocket of defendant's pants. Reaching into the pocket, the officer retrieved two .38 caliber bullets, as well as some clear plastic envelopes containing marihuana. Thereupon, Officer Dellacona ordered the two passengers to exit the vehicle and also frisked them. Having apparently concluded that there must be a weapon about and finding the women unarmed, he turned his attention to the automobile. Since an examination of the vehicle's passenger area failed to reveal a weapon, the officer unsuccessfully endeavored to open the glove compartment. The ignition key had no effect on the lock, and the defendant denied possession of any other key. Officer Dellacona then proceeded to force open the glove compartment wherein he discovered a loaded .38 caliber derringer pistol. The defendant was formally placed under arrest and handcuffed. Based on the foregoing facts, the hearing court granted the defendant's motion to suppress, holding that the search of the glove compartment exceeded permissible constitutional limits.

In *People v Belton* (55 NY2d 49, 55) the Court of Appeals stated that: "where police have validly arrested an occupant of an automobile, and they have reason to believe that the car may contain evidence related to the crime for which the occupant was arrested or that a weapon may be discovered or a means of escape thwarted, they may contemporaneously search the passenger compartment, including any containers found therein."

However, the court in *Belton* specifically declined to reach the question of "whether a container which is not only closed but locked or a container within a vehicle's trunk or baggage compartment comes within the exception" (pp 54-55, n 3). Although *People v Orlando* (56 NY2d 441) also involved a search of the passenger area, as

opposed to the trunk or glove compartment, the court sustained the validity of the police action therein on the ground that the search was supported by probable cause. Notwithstanding the fact that the Court of Appeals has not yet set forth guidelines with regard to warrantless searches of an automobile's closed compartments, the United States Supreme Court in *United States v Ross* (456 US 798) has determined that police officers who have legitimately stopped an automobile may conduct a thorough search of compartments and containers within the vehicle whose contents are not in plain view wherever they possess the requisite probable cause to have enabled them to procure a search warrant.

In the instant case, the hearing court concluded that Officer Dellacona had no reason to fear for his safety since the glove compartment was locked. Moreover, there is no indication that the defendant made any threatening movement or that his behavior was at all suggestive of criminality. The two bullets removed from the defendant's pockets could, at most, have aroused suspicion that the defendant might have a gun. However, that gun could just as well have been stored in the defendant's home, place of business, or some other location, as in the car. The Court of Appeals has decided that the mere purchase of a holster, without more, does not provide sufficient evidence to permit more than an inquiry. (*People v Johnson,* 54 NY2d 958; *People v Samuels,* 50 NY2d 1035.) Similarly, the simple possession of two bullets, in the absence of additional indices of criminal conduct, does not furnish the probable cause necessary to support a search warrant. Consequently, the hearing court appropriately granted the defendant's motion to suppress.

SULLIVAN, J. P., and ROSS, J., concur with KASSAL, J.; FEIN and MILONAS, JJ., dissent in an opinion by MILONAS, J.

Order, Supreme Court, New York County, entered on March 25, 1982, reversed, on the law and the facts, and the motion to suppress denied.