OPINION OF THE COURT
Herman Cahn, J.
The following constitutes the opinion, decision and order of the court.
The instant case presents the novel question of whether a police search of a car known to be rented by defendant is proper, when defendant was then a passenger in another car parked across the street. The time of the search was late at night; the place was a street in a high crime area in New York County. Defendant had just been searched incident to his arrest, and 14 live rounds had been found on his person. In response to the question “Where’s the gun?”, one of his fellow arrestees whispered to the police officer that it was in the other car.
An indictment has been filed against the defendant accusing him of criminal possession of a weapon in the third degree, in violation of subdivision (4) of section 265.02 of the Penal Law. The charge is that, on September 15, 1983, defendant possessed a loaded pistol, said possession not being in defendant’s home or place of business.
*681 Defendant, claiming to be aggrieved by an unlawful search and seizure has made a motion to suppress bullets and the pistol seized from his person and automobile by a police officer on September 15, 1983.
In this case, the People assert that the seizure of the bullets and pistol from defendant’s person and automobile, respectively, was incident to a lawful arrest. The People have the burden, in the first instance, of going forward to show the legality of the police conduct. Defendant, however, bears the ultimate burden of proving by a preponderance of the evidence that the physical evidence should be suppressed.
A pretrial suppression hearing was conducted before me on March 1, and March 7, 1984, at which both the People and defendant adduced testimony. Having seen and heard the witnesses at the hearing, I find the testimony offered by the People to be credible and find that what transpired is as follows.
On September 15, 1983, at approximately 3:25 a.m., Officer Leonard Tuso and his partner while on anticrime patrol in the area, near Houston and Chrystie Streets in Manhattan, observed a parked car with two men seated in the front seat, one of whom was defendant, the other one Barry. The area was known to the officers as a high crime area, especially with respect to narcotics and prostitution. The license plate showed the car to be rented. In view of all the above, and in view of the late hour and deserted street, the officers approached the car and requested the license and registration, which defendant produced. The officers suggested to the occupants of the car that they move along and observed as they complied.
Approximately a half hour later, the officers, still patrolling, again drove up the same street and observed the same car, this time unoccupied and parked on the opposite side of the street. Across the street from this car, another car was parked, with the trunk lock apparently “popped out.” The officers approached and observed five occupants: a woman in the driver’s seat, defendant in the front middle and Barry in the front right with two other males in the back seat. The officers recognized defendant and Barry from the earlier encounter.
*682 The officers requested the woman to produce her driver’s license and the car’s registration. The man seated immediately behind the woman stated that it was his car, and got out of the car to take the registration and his driver’s license from his wallet. Almost simultaneously, of their own volition, the other occupants emerged from the car, and began aimlessly standing around it. The officers, one of whom had apparently recognized the woman as one who had previously been arrested in the area for prostitution, shone a flashlight into the car and observed what appeared to be a small carrying case commonly used by police officers to carry their shields, on the floor of the car. One of the officers reached into the car for the shield and a wallet which lay beside it. Both of these items were on the floor next to the front seat. The officer picked both up.
Upon inspection, the officer determined that the shield was not a police shield but, rather, a novelty shop item. The wallet contained several credit cards. The officers inquired whether any of the car’s occupants had the same name as appeared on the credit cards. Receiving no response to their inquiries, the officers informed all five persons that they were under arrest for possession of stolen property (the wallet and credit cards), and incident to the arrest, conducted a frisk of each. The frisk of defendant revealed 14 bullets in his pocket. Defendant was asked “Where’s the gun?”, to which he replied, “At home.” The woman, however, whispered to the officer that the gun was in the car across the street.
Using the keys that were found during the frisk of Barry, the officers opened the trunk of the other car (in which defendant and Barry had had their earlier encounter with the officers) and found an attaché case, which they opened, discovering a loaded gun.
This case presents several questions concerning proper police conduct within the confines of the Fourth Amendment of the United States Constitution, and section 12 of article I of the New York State Constitution. Where, as here, the reasonableness of a search and seizure is at issue, the police conduct must be examined step by step, as each incremental intrusion must find legitimate justification.
*683 The propriety of approaching the car which resulted in the officers’ initial encounter with defendant and Barry is not at issue. The intrusion was minimal at most, and clearly reasonable under the circumstances.
The approach to the second car for inquiry was also clearly proper. “The police have the right to stop a citizen and inquire of him if they have reasonable suspicion that criminal activity is afoot” (People v Landy, 59 NY2d 369, 376; People v De Bour, 40 NY2d 210). “Reasonable suspicion” is the “quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe [that] criminal activity is at hand.” (People v Cantor, 36 NY2d 106, 112-113.) The observation of a car, with the trunk lock popped out, parked in a high crime area late at night, with five people inside, surely aroused such reasonable suspicion. (See, e.g., People v Landy, 59 NY2d 369, supra; People v Livigni, 58 NY2d 894.)
Upon inquiry by the officers, the occupants emerged. The court credits the officers’ testimony that the occupants left the car voluntarily, and were not directed to do so. While one of the officers examined the proffered license and registration, the other shone his flashlight into the car. There being reasonable suspicion for the initial intrusion, this incremental intrusion was permissible and not unreasonable. Merely shining a flashlight into a parked car and looking in from the outside of a car is not such an intrusion as is constitutionally proscribed. (People v Miller, 52 AD2d 425, 428-429; People v Cruz, 34 NY2d 362, 370; People v Howell, 78 Misc 2d 538, 540.)
Upon looking into the car, still without entering it, the “police shield” and wallet became visible on the floor of the vehicle. This provided probable cause to believe that criminal activity was afoot and that the shield was evidence connected to that crime. The officer had the right to pick up the shield case in order to examine it. Once inside the car, the added infringement on privacy caused by taking the wallet in addition to the shield case was minimal and justifiable in view of the fact that it was in plain view and suspiciously lying on the floor next to the shield case. As a *684 practical matter it would have been absurd for the officer not to retrieve and examine both items.
The shield case, upon closer observation, contained merely a novelty item and not a real police shield. The wallet contained only credit cards. When the officers inquired as to ownership of the cards and wallet (by asking if anyone had the same name as appeared on the credit cards), no one claimed them, and hence probable cause arose to believe that they were stolen. This is especially so, since the name on the cards was a female name, and there was only one female among the car’s occupants; this female remained discreetly quiet when the question of the name on the credit cards was raised.
The officers proceeded to arrest all five of the people who had been in the car, for possession of stolen property. It is questionable whether there was, at that time, probable cause to arrest everyone who had been in the car even though there clearly was probable cause to believe that at least one of them had committed a crime. (Wong Sun v United States, 371 US 471; Mallory v United States, 354 US 449; Johnson v United States, 333 US 10; People v Williams, 79 AD2d 929.) That issue is not before us, however, since the wallet was found near where defendant, who is the only movant here, had been sitting. Hence, with respect to defendant, there was “probable cause particularized as to him”. (People v Williams, supra, at p 930.) The circumstances, in particular the proximity of the wallet to where defendant had been seated, indicated a likelihood that the wallet had been in defendant’s exclusive possession but had been dropped when the police arrived and provided sufficient probable cause for the arrest. (See People v Soler, 53 AD2d 704; People v Sanders, 79 AD2d 688.) The police need not have had proof beyond a reasonable doubt that defendant had committed the crime. Reasonable cause is, of course, the required standard. (CPL 140.10; People v White, 16 NY2d 270.)
The subsequent frisk of defendant, which resulted in the recovery of the bullets was a valid search incident to arrest. (Chimel v California, 395 US 752; People v Weintraub, 35 NY2d 351.)
*685 The final issue is whether the ensuing search of defendant’s car, resulting in the recovery of the gun, was proper, as a search incident to the arrest. Finding bullets in defendant’s pocket clearly provided probable cause to believe that a gun might also be present and that such possession would be a crime. A search of the car from which defendant had emerged would clearly have been permissible as incident to the arrest, especially in view of the expanding scope of such a search where motor vehicles are concerned, under recent case law. (People v Belton, 55 NY2d 49; People v Orlando, 56 NY2d 441; People v Langen, 60 NY2d 170; United States v Ross, 456 US 798.) The justification for the expanding scope of a permissible automobile search once a person is arrested grows out of the combined rationales for the “automobile exception” (inherent mobility, decreased expectation of privacy [Cady v Dombrowski, 413 US 433, 442]) and the search incident to arrest exception (self-protection of police, prevent destruction of evidence [Chimel v California, supra]) to the warrant requirement. Here, the police also had been given a specific “tip” by another person then present and known to them, that the defendant’s car contained a gun. The question is whether these combined rationales under the circumstances presented provide justification for the police action of searching defendant’s car, which was across the street at the time of arrest.
In People v Belton (supra), the Court of Appeals held that, when “police have validly arrested an occupant of an automobile, and they have reason to believe that the car may contain evidence related to the crime for which the occupant was arrested or that a weapon may be discovered or a means of escape thwarted, they may contemporaneously search the passenger compartment, including any containers found therein.” (People v Belton, 55 NY2d 49, 55.) People v Langen (supra) extended the principle, permitting the search of locked containers. Clearly, under Belton the officers had reason to believe a weapon might be discovered and that belief would clearly support the search in the instant case, but for the fact that two different cars are involved.
People v Orlando (supra) provides the justification for bridging that gap and permitting the search of the second *686 car in the instant case. In Orlando, defendant was arrested inside a pharmacy but the court found the ensuing warrantless search of defendant’s car parked outside the pharmacy to have been permissible. The court reasoned that, despite the absence of the exigency present in Ross and Belton (supra), due to the fact that moving vehicles had been involved in those cases, since the police had probable cause to believe that additional contraband was in the car, the search was permissible. The court emphasized the fact that there, as in the instant case, the car was parked in a public place and that this did not necessitate a warrant as might have been the case if it had been parked in a nonpublic place. (56 NY2d, at p 445; cf. Coolidge v New Hampshire, 403 US 443.) The analogy between Orlando and the case presented here, is clear. The only questions remaining open are whether the officers had probable cause to believe the gun would be found in the car, and if so, whether the search of the trunk wherein the gun was found, was permissible.
Taking all circumstances into consideration, the officers did have such probable cause. Finding bullets on the defendant’s person, the likelihood that the gun would also be present was apparent. The officers knew from the earlier encounter that the car across the street was defendant’s and that defendant had been in the car shortly before the arrest. When the woman informed one of the officers that the gun was in the other car, this raised what up until then may have been only suspicion, to the level of probable cause.
Generally, information provided by an identified victim or witness is considered inherently reliable. (People v Hicks, 38 NY2d 90.) It can be assumed from the circumstances that the woman was in this instance speaking as a witness. While she was apparently not an “average citizen informant” (the police were aware of her long criminal record for prostitution) under the circumstances, and compounded with the knowledge already possessed by the officers, there was probable cause to believe the gun was in the car.
As for the fact that the gun was taken from the trunk, rather then the passenger compartment, the trend of case *687 law would clearly uphold the search and seizure. In People v Ellis (93 AD2d 657) in reliance upon United States v Ross (supra), where the trunk of a stopped car was searched, the court held that probable cause to search the vehicle was sufficient to sustain the search of each and every part of the vehicle, including the glove compartment or any locked container. The court upheld the conduct of the police in forcing open a locked glove compartment. In this case, the officers did not resort to force but rather used the keys to open the trunk, clearly a lesser intrusion than in Ellis.
Considering the fact that, in Orlando (supra), defendant was arrested while in a store, and not near the car, the search of the car really could not have been justified as one to secure the area within defendant’s reach, the traditional justification for a search incident to an arrest. (Chimel v California, supra.) This, then, should vitiate the distinction between the search of locked areas within the passenger compartment, upheld in Ellis (supra), and searches of the automobile trunk, as here. (See United States v Ross, 456 US 798, 821, supra.)
The motion to suppress physical evidence is denied.