■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BENNY J. SINATRA, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Golden, J.), rendered July 8, 1980, convicting him of criminal possession of a weapon in the third degree, after a nonjury trial, and imposing sentence. Judgment reversed, on the law, and case remitted to Criminal Term for further proceedings in accordance herewith. There must be a reversal and a new trial because the constitutional requirement (US Const, 6th Amdt; NY Const, art I, § 6) that the defendant be provided with the effective assistance of counsel has not been met. On the afternoon of October 9, 1978, at approximately 3:50 P.M., Police Officers Robert Maloney and Norbert Wernicke were on radio patrol in the area of Wolcott and Richards Streets, in Brooklyn. It was a mild, sunny day. As they traveled on Richards Street, they observed a gray, 1975 Buick Skylark, with two male occupants, parked in front of a pizzeria which had been the subject of a prior investigation. A window of the car was open and one of the proprietors of the pizzeria was standing next to the car, leaning over and talking to the occupants. As the patrol car drove by, the proprietor of the pizzeria stood up and pointed toward the police car and all three individuals stared at it. The owner then walked back into the pizzeria and the Buick pulled away. Officer Maloney did not recall ever having previously seen the Buick in front of that pizzeria. The police officers made a U-turn and followed the vehicle. The driver of the Buick did not accelerate, but after several blocks he drove through a stop sign without slowing down and then made a left turn without signaling. After Officer Maloney turned on the roof lights of the patrol car and the siren, the driver of the Buick pulled his car

over to the curb and stopped. The patrol car parked about one to two car lengths to the rear of the Buick and the officers alighted. Officer Maloney approached the driver's side of the Buick and Officer Wernicke the passenger's side. Both officers noticed that the passenger was sitting slightly bent over from the waist with both hands extended between his legs. When Officer Maloney asked the driver for his license, registration and insurance card, the driver produced a registration in the name of a woman and an expired Florida driver's license, but he had no insurance card. Officer Maloney testified that at his request the driver stepped out of the car and walked with him to the rear of the Buick. Officer Wernicke testified that because he was unable to see the passenger's hands, he asked the passenger for some identification. When the passenger was unable to provide any, Officer Wernicke directed him to get out of the car. As the passenger stepped out of the car, Officer Wernicke saw what appeared to be the barrel of a gun protruding from underneath the front passenger seat. Calling out to his partner to keep an eye on the two individuals, he retrieved a loaded .32 caliber revolver from under the front passenger seat. The occupants of the vehicle were arrested. The driver was identified as Salvatore Ascolesi, the former codefendant, and the passenger as appellant Benny Sinatra. Officer Wernicke did not recall ever having seen the appellant before. Sinatra and Ascolesi were charged, in a one-count indictment, with the crime of criminal possession of a weapon in the third degree. On May 2, 1979, after a hearing, Justice Ramirez denied a motion to suppress the weapon made on behalf of Ascolesi, stating that "[I am] constrained to deny the motion, although [I] do feel that it was a close factual question." Ascolesi was acquitted after a trial. At appellant's nonjury trial before Justice Golden on May 2, 1980, appellant was represented by assigned counsel who was not the attorney that had represented Ascolesi. No motion to suppress was made on appellant's behalf. The only witness for the defense was the former codefendant. Ascolesi testified, *inter alia,* that the Buick was registered in his wife's name and that he and his wife both used the car. He had never seen the gun until the police officer took it out of the car. It was warm day, he and appellant had been driving to various places and the car had been left unattended, with the windows open, three times in different locations. This testimony was stressed by defense counsel during his summation. In finding the appellant guilty, Justice Golden commented: "The defense interposed on behalf of the defendant seeking to suggest that the weapon found in the car was perhaps secreted there by somebody planting it on the defendant or was thrown there or discarded there stretches credulity." Justice Golden then asked defense counsel whether a psychiatric evaluation would be of help and defense counsel said that it would not. After appellant was escorted from the courtroom, the court stated for the record: "Let the record reflect that all through this trial the defendant was either asleep or high on something and in that sense was out of it through the testimony and argument and decision of the Court." Following a written complaint made by appellant with respect to his trial counsel's representation, trial counsel was relieved prior to appellant's sentencing. Appellant's new counsel moved to "vacate" the verdict. At Justice Golden's request, appellant's trial counsel appeared at sentencing. After he explained that he had "made a determination that a motion to suppress was not justifiable at the time", Justice Golden stated that appellant's trial counsel had made a "tactical decision" and he denied the motion to vacate the verdict. The applicable principle is that where "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met (see *People v Jackson,* 52 NY2d 1027;

*People v Aiken,* 45 NY2d 394, *supra; cf. People v Bell,* 48 NY2d 933; *People v Droz,* 39 NY2d 457, *supra).*" (*People v Baldi,* 54 NY2d 137, 147.) It is clear that counsel's conduct of the defense at the trial does not meet the standard. The gun found in the Buick is the only evidence against the appellant. At the time of the trial, there would have been no question as to appellant's standing to contest the validity of the search of the vehicle as the "automatic standing" rule was not abrogated by our Court of Appeals until November, 1981 (see *People v Ponder,* 54 NY2d 160). The Judge who presided at the suppression hearing conducted on the motion of appellant's former codefendant had stated in his decision that there was a "close factual question" (see *People v Harrison,* 83 AD2d 965; cf. *Pennsylvania v Mimms,* 434 US 106; *People v David L.,* 56 NY2d 698, revg 81 AD2d 893). Appellant's trial counsel had everything to gain and nothing to lose by making a motion to suppress the weapon. His decision not to make such a motion was a decision to forego the opportunity to contest the admissibility of the only evidence against his client. Further, appellant's attitude throughout the proceedings was such that Justice Golden was impelled, *sua sponte,* to have entered on the record his observation that "all through this trial the defendant was either asleep or high on something and in that sense was out of it through the testimony and argument and decision of the court." His comment may be an indication that the appellant was mentally incompetent or under the influence of drugs. Defense counsel, however, not only failed to raise the issue of his client's competency to stand trial, but even rejected the court's implied suggestion, after finding the appellant guilty, that a psychiatric evaluation would be appropriate. No examination pursuant to either CPL article 730 or article 23 of the Mental Hygiene Law was requested by either the Trial Judge or defense counsel. Viewed in totality, counsel's decision not to make a suppression motion and not to request an examination to determine his client's fitness to proceed and his election to present a defense which, in the words of the Trial Judge, "stretches credulity", cannot be considered "mere losing tactics" or unsuccessful trial strategy, but constitutes "true ineffectiveness" of counsel (see *People v Baldi,* 54 NY2d 137, 146, *supra*). The People's argument that no issue with respect to appellant's competency to stand trial is preserved for appeal because of appellant's failure to raise the issue at Criminal Term is meritless. The issue of capacity to stand trial, being one which is intimately bound up with a defendant's right to a fair trial, may be raised on appeal for the first time (cf. *People v Jones,* 81 AD2d 22, 31). Moreover, neither appellant nor his new counsel could have been aware of the Trial Judge's statement that the appellant was "out of it" throughout the proceedings. That statement was made at the conclusion of the trial after appellant was removed from the courtroom. Thereafter appellant was represented by a different attorney. Neither appellant nor his new counsel could have seen the trial minutes until after appellant obtained leave to appeal on original papers. An application to vacate the judgment was made and denied on the ground that the appeal was pending. Even if appellant had been present and had been represented by the same attorney, the right to have a court determine his capacity to stand trial cannot be waived by a defendant who may be incompetent (see *People v Armlin,* 37 NY2d 167, 172, citing *Pate v Robinson,* 383 US 375, 384). Accordingly, a new trial is required. Under the circumstances, appellant, if he be so advised, may move to suppress the weapon and for an examination under CPL article 730 and/or article 23 of the Mental Hygiene Law. In the event a motion to suppress is made, the question of standing should be determined at Criminal Term. Damiani, J. P., Gibbons, O'Connor and Boyers, JJ., concur.