■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANDREW S., Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Dufficy, J.), rendered January 20, 1982, adjudicating him a youthful offender, upon a jury verdict finding him guilty of robbery in the second degree.

Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered.

On the evening of July 12, 1981, at approximately 10:00 P.M., Frank Feldman, his brother and three friends, including Jean Garcia, were seated on the boardwalk listening to a radio near 32nd Street in Queens County when a group of four men approached. One of the men came over to the group and asked for a

cigarette. Garcia complied, and upon receiving the cigarette, the man rejoined his three friends who were standing about 20 feet away. Moments later, one of the men, allegedly the defendant, grabbed Garcia from behind. The group was ordered to "freeze" as a second male grabbed Feldman's radio. When Feldman attempted to regain possession of the radio, he was stabbed from behind by a third male, whom he later identified as Jerome Wimbush. During the incident, Feldman noticed that the fourth male, whom he identified as Derrick Ramsey, was standing over to the side watching the group. Once the stabbing occurred, all four men fled the scene.

At trial, Feldman identified the defendant as the man who first approached Garcia for a cigarette, and who later grabbed her from behind. Feldman acknowledged that at the preliminary hearing held on July 27, 1981, 15 days after the crime, he was unable to identify the defendant as Garcia's assailant but was able to identify him before the Grand Jury even though defendant was not present before that tribunal. Feldman explained that he had recognized the defendant at the preliminary hearing but was unable to place him until some time later. In addition, it was established that when Feldman was interviewed by an officer two days after the crime, he was unable to identify a photograph of the defendant.

Officer Colletta, who was assigned to investigate the July incident, arrested Derrick Ramsey on July 13, 1981. Ramsey had been standing on 32nd Street in Queens and was in possession of Feldman's radio. After being advised on his *Miranda* rights, Ramsey told the officer that he was on a boardwalk during the robbery and he observed Wimbush stab Feldman. Once the men fled the scene, the defendant approached Ramsey and asked if he wanted to buy Feldman's radio for $60. Ramsey told the defendant that he did not have the money with him. The defendant gave Ramsey the radio and said that Ramsey could pay him later. Ramsey did not testify at trial. The contents of his statement were testified to by Officer Colletta. Although defense counsel raised a preliminary objection to the officer's reference to his conversation with Ramsey, no objection was raised when the officer's testimony was later introduced.

Officer Colletta also testified that he interviewed Garcia several days after the incident and she stated that the defendant approached her, grabbed her arm, and announced a stickup while simulating a weapon in his pocket with his hand. Garcia, however, was unable to identify the defendant through the photographs shown to her. Garcia did not testify at trial and no objection was raised to the officer's testimony concerning Garcia's statement.

As a result of his investigation, Officer Colletta placed the defendant under arrest and brought him to the precinct. After receiving his *Miranda* rights, the defendant agreed to give a statement. The defendant admitted to being on the boardwalk on the evening in question with three of his friends, including Wimbush and Ramsey. When he observed a group of youths on the boardwalk, the defendant approached the female in the group and asked for a cigarette. At that time, the defendant placed his hand in his pocket to indicate a weapon and announced a stickup. The defendant's companion, Wimbush, then stabbed a male in the group while Ramsey grabbed the radio.

Prior to trial, the People filed a CPL 710.30 notice indicating an intention to introduce the defendant's statement at trial. The statement which was noticed was merely that "Jerome Wimbush did the stabbing". No further evidence was contained in the notice. In his opening remarks, the prosecutor referred to the full content of the defendant's custodial statement in which he admitted to participating in the robbery. No objection was raised by defense counsel at that time regarding the inadequacy of the statutory notice filed by the People pursuant to CPL 710.30.

At trial, the defendant denied any participation in the robbery and stabbing incident. The defendant testified that he was with three of his friends, Davis, Ramsey and Wimbush, on the boardwalk and they passed by a group of youths. While he was standing about three or four feet away from the youths, the defendant observed Davis approach the female youth and ask for a cigarette. Ramsey then grabbed a radio which was next to one of the youths as Wimbush stabbed the youth who attempted to resist. The defendant denied any knowledge that Wimbush was carrying a weapon. After the stabbing occurred, the defendant fled the scene.

Following the jury's deliberation, the defendant was found guilty of robbery in the second degree. On appeal, the defendant argues that he was denied effective assistance of counsel as a result of several deficiencies in counsel's representation. We agree and accordingly reverse.

The standard to be applied in determining whether a defendant received effective assistance of counsel is whether, under the totality of the circumstances, his attorney provided "meaningful representation" (*People v Baldi,* 54 NY2d 137, 147). In the case at bar, a review of the record clearly indicates that this standard was not met due to several errors by defense counsel which prejudiced the defendant (*People v Droz,* 39 NY2d 457, 462; *People v Figueroa,* 83 AD2d 564; *People v Moore,* 102 AD2d 898). First, and most significantly, defense counsel failed to seek

preclusion of the defendant's inculpatory statement which had not been properly noticed pursuant to CPL 710.30. The prosecutor's opening remarks concerning the content of the defendant's custodial statement clearly indicated that the prosecution's statutory notice was incomplete. Had defense counsel asserted surprise or prejudice at that time as a result of the inadequate statutory notice, the remedy of preclusion would have been available, provided the People were unable to demonstrate good cause for serving an incomplete notice (CPL 710.30 [1]; *People v Greer*, 42 NY2d 170, 178-179; *People v Spruill*, 47 NY2d 869). Moreover, defense counsel's failure to object cannot be reasonably viewed as a trial tactic or as a deliberate waiver with strategical justification (*People v Baldi, supra*, p 146). The defense theory asserted at trial was one of nonparticipation in the robbery. Clearly the introduction of the defendant's custodial admission to his participation in the crime rendered a severe blow to the viability of that defense.

Second, defense counsel's failure to request a *Huntley* hearing is troublesome. At trial, the defendant claimed that his statement was coerced because of Officer Colletta's refusal to permit the defendant to contact his family and the officer's continued insistence that the defendant did the stabbing. The defendant also denied ever making the admission testified to by Officer Colletta. If defense counsel had sought a prior determination on the issue of voluntariness and had been successful, the evidence would not have been admitted at trial, and defendant would have been absolutely shielded from the risk that an involuntary confession would be considered as evidence of guilt (*Jackson v Denno*, 378 US 368, 389-391; *People v Rodriguez*, 94 AD2d 805, 806; *People v Sinatra*, 89 AD2d 913, 915).

Third, defense counsel's failure to object to Officer Colletta's testimony regarding his conversations with Ramsey and Garcia was another deficiency in his trial performance. This inculpatory evidence was unquestionably hearsay testimony and should have been excluded from evidence. It should be noted that absent this evidence and the defendant's custodial admission, the proof of guilt in this case was extremely weak. Thus, if the hearsay testimony and the defendant's admission were excluded, there was a reasonable probability that the outcome of the trial would have been different (*see, Strickland v Washington*, 466 US __, __, 104 S Ct 2052, 2068).

Other errors committed by defense counsel include the failure to object to the prosecutor's improper summation remarks referring to the fact that the defendant did not call certain witnesses and counsel's failure to object to that portion of the court's jury

charge which improperly marshaled the evidence in favor of the prosecution. Finally, we note that the court's charge on the issue of intent, which, when read in its entirety, improperly shifted the burden of proof on this element to the defendant, should have been objected to by defense counsel (*see, Sandstrom v Montana,* 442 US 510; *People v Getch,* 50 NY2d 456).

In view of the cumulative effect of the above-mentioned errors, we conclude that the defendant was denied his constitutional right to the effective assistance of counsel and is thus entitled to a new trial. Brown, J. P., Niehoff, Rubin and Eiber, JJ., concur.