■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EUGENE KINDELL, Appellant. [23 NYS3d 65]—

Appeal from judgment, Supreme Court, New York County (Daniel P. Conviser, J., at suppression hearing; Rena K. Uviller, J., at jury trial and sentencing), rendered December 19, 2011, convicting defendant of burglary in the second degree, attempted burglary in the second degree and bail jumping in the second degree, and sentencing him, as a persistent violent felony offender, to an aggregate term of 19½ years to life, held in abeyance, and the matter is remitted to Supreme Court for a reopened suppression hearing.

The existing, unexpanded record is sufficient to establish that defendant received ineffective assistance when his trial counsel failed to move to reopen the suppression hearing based on trial testimony. The court denied suppression of a tool bag and the burglar's tools it contained, based on the suppression

hearing testimony of two officers that the bag was open at defendant's feet and the tools were in plain view when the building superintendent who had chased defendant and detained him flagged down their police car. However, the superintendent testified at trial that the bag was in defendant's hand and closed when the police arrived. We agree with defendant that the failure of trial counsel—who, notably, did not represent defendant at the hearing—to move to reopen the hearing in light of the superintendent's testimony was both objectively unreasonable and prejudicial (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *see also Strickland v Washington*, 466 US 668 [1984]).

Under CPL 710.40 (4), a suppression hearing may be reopened upon a showing that the defendant has discovered "additional pertinent facts" that "could not have [been] discovered with reasonable diligence before the determination of the motion." Here, the additional facts were "pertinent" because the superintendent's testimony, if credited, would have undermined the ruling that the tools were admissible because they were in plain view. This was not a minor or routine inconsistency; the superintendent's version was completely at odds with a plain view theory. Any issue of whose recollection was most reliable should have been presented to the hearing court.

With regard to the "reasonable diligence" requirement, the People argue that it was not met here because defendant, who was standing several feet from the superintendent when the police arrived, was in a position to know whether the bag was closed or open at the time. Under the rule the People posit, evidence adduced for the first time from a witness at trial—no matter how reliable the witness, how unlikely he or she would have been to cooperate with the defense investigation before trial, or how conclusively his or her testimony would undermine the suppression ruling—would never entitle a defendant to a reopened hearing, so long as the defendant was in a position where he or she could have observed the same events as the witness. We reject such a narrow reading of the statute (*see e.g. People v Figliolo*, 207 AD2d 679 [1st Dept 1994]). While, as a general matter, a defendant may be presumed to have knowledge of the circumstances surrounding his or her arrest (*see People v Hankins*, 265 AD2d 572 [2d Dept 1999], *lv denied* 94 NY2d 880 [2000]), that presumption is not mandatory, and the principle does not mandate the conclusion that such knowledge existed under the particular facts of this case. However, even if such knowledge is assumed, we find that,

under these circumstances, defendant satisfied the "reasonable diligence" requirement. He could not have known that a People's witness would completely contradict the police officers on the critical suppression issue. Moreover, if at the hearing, he had taken the stand to present his account of the arrest, his credibility would have been subject to impeachment because his status as an interested witness and his lengthy criminal record.

Contrary to the dissent's suggestion, the possibility that defense counsel did not move to reopen the suppression hearing because he "legitimately" did not believe the superintendent's testimony about the bag is speculative and improbable. Indeed, to reach such a conclusion counsel would have had to disregard several compelling factors that undermine such assessment: (1) when a witness makes specific and detailed factual allegations that are helpful to a defendant, it is unreasonable to summarily reject it as incredible;* (2) it is unreasonable for a defense counsel to discredit an unbiased witness's testimony that is helpful to the defendant and instead assume that a police officer's testimony is the only credible testimony; and (3) the suppression court would have examined the officer's testimony on this issue without hearing the superintendent's testimony to the contrary.

Under these circumstances, it is far more likely that counsel, who did not represent defendant at the suppression hearing, did not focus on the contradiction and gave no thought to a motion to reopen. More importantly, even if the dissent is correct about counsel's subjective belief that the superintendent was mistaken about the police opening the bag, it is difficult to comprehend how opting not to give the court the opportunity to make that credibility determination for itself can be deemed a competent strategy. Indeed, defense counsel "had everything to gain and nothing to lose" by moving to reopen the suppression hearing (*see People v Sinatra*, 89 AD2d 913, 915 [2d Dept 1982]). A decision not to make such a motion was a decision not to contest the admissibility of critical evidence against his client.

It is difficult to take seriously the dissent's argument that counsel may have believed that reopening the suppression hearing would have been of little or no value. Indeed, as the dissenter himself points out, at trial, counsel exerted significant effort to minimize the probative value of the evidence found in

---

* Specifically, the superintendent testified that the officers opened the bag after they directed defendant to put it down and that he did not satisfactorily answer their questions.

defendant's possession, which the People argued constituted "burglary tools." Defense counsel argued that the tools alleged to be in defendant's possession were not described in any detail and appeared to be typical of those used by a contractor or handyman, which was consistent with defendant's statement that he was a contractor, not a burglary. Likewise, during summation, counsel informed the jury that they would receive an adverse inference charge from the court instructing them that because the police had lost the bag and tools, they could infer that the evidence would have been unfavorable to the People. Under the circumstances, contrary to the dissent's suggestions, the suppression of this incriminating evidence—the burglary tools—would have been consistent with defense counsel's theory at trial that there was no evidence that defendant entered 336 East 71st Street unlawfully or that he intended to commit a crime.

The dissent also posits that defense "counsel, understandably, may have thought it counterproductive to run the risk of bolstering the credibility of the only witness who claimed to have seen defendant inside the building." The dissent, however, fails to explain how defense counsel's use of a presumably unbiased prosecution witness's testimony to seek suppression of evidence would have enhanced the same witness's credibility at trial to the detriment of defendant. If at the reopened suppression hearing, the court had found the witness's testimony about the events surrounding the bag credible, then the evidence would have been suppressed and not subject to direct or cross-examination at trial. Conversely, had the court found that suppression was not appropriate despite the conflicting testimony of the witness and the officer, that ruling would not have enhanced the witness's credibility in any way. In short, defense counsel did not have any reasonable strategy for failing to move to reopen the suppression hearing. Concur—Friedman, J.P., Acosta, Renwick and Moskowitz, JJ.

Andrias, J. dissents in a memorandum as follows: The majority holds that the existing, unexpanded record is sufficient to establish that defendant received ineffective assistance when his trial counsel failed to move to reopen the suppression hearing based on trial testimony. However, on the record before us, this Court should not abandon the long established principle of requiring, except in rare cases, a CPL 440.10 motion to explore defense counsel's reasoning when a defendant raises an ineffective assistance of counsel claim that involves matters that are not fully explained by the record, including matters of strategy (*see generally People v Rivera*, 71 NY2d 705 [1988];

*People v Love*, 57 NY2d 998 [1982]). For this reason and those that follow, I dissent and would affirm the judgment appealed from.

Defendant was charged with: (1) burglary in the second degree for the building at 336 East 71st Street; (2) burglary in the second degree for apartment 5-E at that building; (3) attempted burglary in the second degree for apartment 5-C at that building; (4) possession of burglar's tools; (5) burglary in the second degree for the building at 310 East 75th Street; (6) attempted burglary in the second degree for apartment 4-J at that building; and (7) bail jumping in the second degree.

The trial court dismissed the possession of burglar's tools charge after the People informed the court that the police had lost the tool bag found in defendant's possession and the tools that it contained. Defendant was convicted of burglary in the second degree with respect to the building at 336 East 71st Street and the attempted burglary of apartment 5-E, and acquitted of the remaining burglary and attempted burglary charges. He was also found guilty of bail jumping in the second degree.

Prior to trial, the court denied defendant's motion to suppress the tool bag and tools on the ground that the search of the bag was justified under the plain view doctrine. The court credited the suppression hearing testimony of two police officers that the bag was open at defendant's feet, and the tools visible, when they arrived at the scene after the building superintendent at 336 East 71st Street flagged down their police car. Defendant did not testify or call any witnesses at the hearing.

Defendant argues that his trial counsel was ineffective for failing to move to reopen the suppression hearing after the superintendent testified at trial that the bag was in defendant's hand and closed when the police arrived, which conflicted with the officers' hearing testimony that the bag was open. However, "[i]n many cases, there may be strategic reasons for a lawyer's choice" to pursue or discard any particular defense strategy (*People v Nesbitt*, 20 NY3d 1080, 1081 [2013]). "For that reason, claims of ineffective assistance based on such choices must usually be adjudicated in posttrial motions, so that evidence may be presented to show why counsel acted as he did" (*id.* at 1082). Thus, "unless it is clear from the record that there could not have been any legitimate trial strategy for [defense counsel's conduct], we must deny defendant relief" (*People v Evans*, 16 NY3d 571, 575 [2011], *cert denied* 565 US —, 132 S Ct 325 [2011]). Here, defendant's ineffective as-

sistance of counsel claim is unreviewable since it involves matters not reflected in or fully explained by the record (*see People v Rivera*, 71 NY2d at 709 [1988]; *People v Gillette*, 132 AD3d 572 [1st Dept 2015]; *People v Cruz*, 131 AD3d 889 [1st Dept 2015]).

Contrary to the majority, "[t]his is not one of the rare cases where the trial record itself permits review of an ineffective assistance of counsel claim challenging counsel's strategy" (*see People v Nowrang*, 120 AD3d 1112, 1113 [1st Dept 2014], *lv denied* 25 NY3d 1168 [2015]). The failure to move to reopen a suppression hearing does not in and of itself demonstrate that defendant received ineffective assistance of counsel (*see e.g. People v Charles*, 152 AD2d 593, 593 [2d Dept 1989], *lv denied* 74 NY2d 846 [1989] ["The defense counsel's failure to move to reopen the suppression hearing, following trial testimony which indicated that the defendant may have been ordered by police to open a bag which was found to contain cocaine, did not, under the circumstances of this case, demonstrate that the defendant received the ineffective assistance of counsel"]; *People v Smith*, 128 AD3d 1434, 1434 [4th Dept 2015] ["the failure to request a particular hearing, in and of itself, does not constitute ineffective assistance of counsel"], *lv denied* 26 NY3d 1011 [2015]; *People v Perea*, 27 AD3d 960 [3d Dept 2006] [same]). Thus, without the benefit of hearing from defense counsel, we have no basis for determining whether there was a strategic or other legitimate explanation for counsel's conduct (*see People v Raosto*, 110 AD3d 524 [1st Dept 2013], *lv denied* 22 NY3d 1090 [2014]; *People v Gordon*, 92 AD3d 580 [1st Dept 2012], *lv denied* 19 NY3d 864 [2012]).

For example, if the hearing was reopened, defense counsel would have to convince the court that the superintendent, the primary witness against defendant on the burglary charges for the building at 336 East 71st Street, was credible. Counsel, understandably, may have been reluctant to do this (*see People v Nowrang*, 120 AD3d at 1113), even though the superintendent's suppression testimony would not have been heard by the jury. Alternatively, counsel may have concluded that the superintendent's recollection of the events surrounding the bag was inconsistent and that his testimony would not have convinced the court that the police officers had fabricated their account (*see People v Stultz*, 2 NY3d 277, 287 [2004] [assistance of trial is not rendered ineffective by counsel's failure to "make a motion or argument that has little or no chance of success"]).

The majority believes that it would have been unreasonable for defense counsel to summarily reject the possibility that the

superintendent's testimony may have been credited due to factors including its specificity. However, the superintendent, a civilian witness whose trial testimony was given 4½ years after the incident, testified inconsistently that the police opened the bag while defendant was on the street and that they opened it after placing defendant in a police car. In contrast, the officers, unlike the superintendent, were trained to focus on details such as the location of the bag and whether it was open, had reviewed the case file and other documents in preparation for trial, and gave accounts that were consistent with one another. Thus, defense counsel could have reasonably believed that reopening the suppression hearing would be futile.

Furthermore, defense counsel may have believed that reopening the suppression hearing, even if successful, would not have had a significant impact on his strategy. The possession of burglar's tools charge had been dismissed, and the bag and its tools had been lost. While a suppression ruling in defendant's favor would have barred police testimony about the search of the bag and its contents, it would not have barred the testimony of the superintendent that he discovered defendant, prior to the arrival of the police, standing in front of the door to apartment 5-E holding a small black tool bag and that defendant told him that he was a contractor who was in the building to do work.

Faced with the superintendent's testimony, the defense theory at trial was that there was no evidence that defendant entered 336 East 71st Street unlawfully or that he intended to commit a crime. Counsel stressed that no one saw defendant in the act of breaking into the building or any apartment therein, or checked to see if he was actually doing work for another tenant. Counsel also asserted that there was no fingerprint or DNA evidence implicating defendant, and that the tools alleged to be in defendant's possession had not been described in any detail and appeared to be typical of those used by a contractor or handyman, which was consistent with defendant's statement to the superintendent that he was a contractor. Further, during summation, counsel informed the jury that they would receive an adverse inference charge from the court instructing them that because the police had lost the bag and tools, they could infer that the evidence would have been unfavorable to the People. Thus, counsel may have believed that reopening the suppression hearing would be of little or no value, and that the better course of action was to proceed with his chosen trial strategy (*see People v Satterfield*, 66 NY2d 796, 799-800 [1985] ["It is not for this court to second-guess whether a course

chosen by defendant's counsel was the best trial strategy, or even a good one, so long as defendant was afforded meaningful representation"]).

Additionally, during cross-examination, after the superintendent repeated his version of the events, the court had the parties approach the bench where they had an untranscribed discussion. A CPL 440.10 motion is necessary so counsel can explain what transpired during that conference, which may be relevant to his decision not to move to reopen the hearing.

Lastly, a court may reopen a hearing during trial where, inter alia, the defendant makes a showing "that additional pertinent facts have been discovered by the defendant which he [or she] could not have discovered with reasonable diligence before the determination of the [original suppression] motion" (CPL 710.40 [4]). The facts elicited from the superintendent at trial pertained to circumstances that occurred in defendant's presence, of which he is presumed to have had knowledge before the suppression motion was decided (see People v Walker, 115 AD3d 889, 890 [2d Dept 2014], lv denied 23 NY3d 969 [2014]; People v Anthony, 114 AD3d 866, 867 [2d Dept 2014], lv denied 23 NY3d 1033 [2014]). Thus, defense counsel may have reasonably concluded that a request to reopen the suppression hearing would be futile (see e.g. People v Lopez, 232 AD2d 222 [1st Dept 1996], lv denied 89 NY2d 865 [1996]).

The majority states that the possibility that counsel did not move to reopen the hearing for any of these strategic reasons is "speculative and improbable," and that it is far more likely that counsel, who did not represent the defendant at the suppression hearing, did not focus on the contradictions between the testimony of the police officers and superintendent and gave no thought to a motion to reopen. However, this is precisely why a 440.10 motion was required, namely, to determine whether or not counsel had a strategic reason for his conduct. Indeed, while he did not handle the suppression hearing, it is speculative to assume that trial counsel had not been provided with the minutes of the hearing or that he did not know that the court, crediting the police testimony, had denied suppression based solely on the plain view doctrine.

Citing People v Sinatra (89 AD2d 913, 915 [2d Dept 1982]), the majority states that counsel "had everything to gain and nothing to lose" by moving to reopen the suppression hearing, and that his failure to do so "was a decision not to contest the admissibility of critical evidence against his client." However, in Sinatra, the weapon found under the front passenger seat of a car was the only evidence against the defendant with respect

to the criminal possession of a weapon charge, and defense counsel never made a motion to suppress it. Counsel also failed to request an examination to determine his client's fitness. In stark contrast, here, the bag and its tools had been lost, the possession of burglar's tools charge had been dismissed, and the testimony concerning the bag and its tools was only a small piece of the evidence demonstrating that defendant unlawfully entered the building with the intent to commit a crime inside and that he attempted to burglarize apartment 5-E.

Among other evidence, the superintendent, who lived and worked in the building, testified that he was walking up to his 5th floor apartment when he heard three loud taps as he passed the 3rd floor. When he reached the 5th floor, he discovered defendant, who was not a tenant and did not have permission to be there, standing in front of the door to apartment 5-E. No one else was in the hallway.

When the superintendent approached defendant and asked him how he was doing, defendant, without replying, walked by him and went down the stairs. The superintendent then examined the door to 5-E and saw that it had been pried open by half an inch, that the door frame, which had been painted three days earlier, was "dented up" and "mangled" and had paint chipped away, and that there was a dent on the bottom lock.

The superintendent chased defendant. When he caught up to him, defendant first tried to jerk away, and then told him that he was a contractor scheduled to do work in the building. However, defendant could not identify the tenant he was working for or describe the work he was hired to do.

The tenant of 5-E testified that she had never met defendant and had not given him permission to enter the building or to perform work in her apartment that day. When she returned to her apartment that evening, she noticed that her front door was "slightly ajar," that paint was chipped from the door frame, and that the doorknob was scratched. Additionally, the bottom door lock was "very wobbly." Both the superintendent and the tenant testified that the door had been in pristine condition that morning, indicating that the damage had been done recently. The People also introduced photographs showing the entrance of the building and the condition of the locks, doorknob, door opening, door jamb and the floor near apartment 5-E, as well as the testimony of police officers involved in defendant's arrest.

Furthermore, defendant made a CPL 440.10 motion on the grounds of ineffective assistance of counsel that was denied,

and failed to obtain permission from this Court to appeal the denial. "Accordingly, the merits of the ineffectiveness claims may not be addressed on appeal" (*People v Polanco*, 121 AD3d 436, 437 [1st Dept 2014], *lv denied* 24 NY3d 1221 [2015]; *see also People v Thomas*, 55 AD3d 357, 359-360 [1st Dept 2008], *lv denied* 12 NY3d 785 [2009], 12 NY3d 788 [2009], 12 NY3d 783 [2009]; *see also People v Baron*, 133 AD3d 516 [1st Dept 2015]).

Assuming arguendo that the present record did permit review of defendant's ineffective assistance of counsel claim, I would reject that claim. Defendant has not shown that trial counsel's single error or omission in failing to move to reopen the suppression hearing was "so egregious and prejudicial as to deprive [him] of a fair trial" (*People v Cummings*, 16 NY3d 784, 785 [2011] [internal quotation marks omitted], *cert denied* 565 US —, 132 S Ct 203 [2011]). As detailed above, the possession of burglar's tools count had been dismissed, and the bag and tools, which the police had lost and which were the subject of an adverse inference charge, were not the only evidence against defendant. Furthermore, viewed in their totality, the circumstances reveal that counsel pursued a credible defense strategy, made cogent opening and closing statements, vigorously cross-examined the People's witnesses, and obtained defendant's acquittal of numerous charges.

Contrary to defendant's pro se ineffectiveness claim, the superseding indictment was not defective and counsel was not ineffective for failing to move to dismiss it.

Viewing the evidence in the light most favorable to the prosecution, the evidence at trial was legally sufficient to establish that defendant failed to appear during the 30 days following his first failure to appear, that defendant unlawfully entered the building with the intent to commit a crime inside, and that defendant attempted to burglarize apartment 5-E (*see People v Danielson*, 9 NY3d 342 [2007]). On the record before us, the verdict was not against the weight of the evidence. Nor is there any basis for reducing the sentence.

Accordingly, I would affirm the judgment convicting defendant of burglary in the second degree, attempted burglary in the second degree and bail jumping in the second degree, and sentencing him, as a persistent violent felony offender, to an aggregate term of 19½ years to life.